**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KTRV LLC, *et al.*,[1] | Case No. 25-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 17, 2025 at 3:00 p.m. (ET)** |
| | **Obj. Deadline: April 10, 2025 at 4:00 p.m. (ET)** |
| | **Re: Docket Nos. 14 & 57** |

**OBJECTION OF ANGELA SVONAVEC, JASON SVONAVEC, AND HERITAGE
HOLDING CO., LLC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING DEBTORS AND DEBTORS IN POSSESSION TO
(A) USE CASH COLLATERAL AND (B) GRANT ADEQUATE PROTECTION TO THE
PREPETITION LENDER; (II) MODIFYING THE AUTOMATIC STAY; AND
(III) GRANTING RELATED RELIEF**

Angela Svonavec ("Mrs. Svonavec"), Jason Svonavec ("Mr. Svonavec," and together with

Mrs. Svonavec, the "Svonavecs"), and Heritage Holding Co., LLC ("HHC," and collectively, the

"Objecting Parties") hereby object (this "Objection") to the *Debtors' Motion for Entry of Interim*

*and Final Orders (I) Authorizing Debtors and Debtors in Possession to (A) Use Cash Collateral*

*and (B) Grant Adequate Protection to the Prepetition Lender; (II) Modifying the Automatic Stay;*

*and (III) Granting Related Relief* [D.I. 14] (the "Cash Collateral Motion")[2], filed by KTRV LLC

("KTRV") and Heritage Coal & Natural Resources, LLC ("HCNR," and together with KTRV, the

"Debtors") for an order (i) authorizing the Debtors' use of cash collateral, (ii) granting adequate

protection; and (iii) granting related relief.  In support of this Objection, the Objecting Parties state

as follows:

---

[1] The Debtors in these chapter 11 cases, along with each the last four digits of each Debtor's tax identification number,
are as follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The Debtors' service address is
1521 Concord Pike, Suite 201, Wilmington, DE 19803.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Cash Collateral
Motion.

## I.    INTRODUCTION

1.    The Debtors' Cash Collateral Motion is another salvo in the ongoing and orchestrated effort to further enable Bedrock Industries Investco 1 LLC ("Bedrock")—an insider to the Debtors—to extract all value from the Debtors.

2.    As discussed in the Objecting Parties' Settlement Motion Objection[3], the Debtors failed to disclose the full scope of the insider, family relationships at play with its prepetition lender, Bedrock.  Bedrock was founded by Alan Kestenbaum who now acts as CEO, manager and beneficial owner.  Although the Debtors disclosed a relationship to Bedrock, creditors and this Court were led to believe that the only relationship between the Debtors and Bedrock was that Alan Kestenbaum is the father and father in law of the Debtors' two managers.  However, ***all of the membership interests in KTRV are held directly or indirectly by Alan Kestenbaum's wife, daughter, or sons***, and Alan Kestenbaum is the sole trustee for a trust that holds a 41% membership interest in KTRV.

3.    The Debtors explain that the use of cash collateral will "create [*sic*] framework for these cases moving forward," instead the relief requested in the Cash Collateral Motion would predetermine the fate of these Chapter 11 Case and allow Bedrock to set in stone a mechanism for it—through the Debtors—to implement a self-serving strategy to (i) perfect its current liens; (ii) acquire liens on any unencumber assets; (iii) foreclose the investigation of and ability to litigate valuable claims against Bedrock; and (iv) require the estates to pay its legal fees in these cases,

[3] Contemporaneously herewith, the Objecting will file the *Objection of Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC to the Motion of the Debtors and Debtors-In-Possession for Order Pursuant to 11 U.S.C. §§ 105(A) and 363 and Fed. R. Bankr. P. 9019(B) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC With Respect to the Strict Foreclosure and Foreclosed Equipment* (the "Settlement Motion Objection") in response to the *Motion of the Debtors and Debtors-in-Possession for Order Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 9019(b) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC with Respect to the Strict Foreclosure and Foreclosed Equipment* [D.I. 26] (the "Settlement Motion").  The arguments raised in the Settlement Motion Objection are adopted as if set forth herein.

which collectively would enable Bedrock to utilize the bankruptcy for its benefit to the exclusion of other creditors.

4.    This result is assured as Bedrock and the Debtors have intertwined the relief sought in the Cash Collateral Motion and the Settlement Motion, such that the failure of this Court to grant the Settlement Motion is an Event of Default under the Cash Collateral Order.  *See Interim Order (I) Authorizing Debtors and Debtors in Possession to (A) Use Cash Collateral and (B) Grant Adequate Protection to the Prepetition Lender; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [D.I. 57] ("Interim Order").  Moreover, upon the Challenge Deadline, Bedrock would under the Cash Collateral Order be released for any and all claims based on their prepetition relationship with the Debtor—including in connection with the Prepetition Loan Obligations, the Prepetition Loan Documents, and the Prepetition Bedrock Liens as well as claims under chapter 5 of the Bankruptcy Code.  This absolute release for Bedrock is also what is sought in the Settlement Motion.

5.    The Cash Collateral Motion also provides onerous Events of Default—two of which the Debtors have already defaulted under—that seek to provide for the end result in these cases.  The Debtors have not filed a Bidding Procedures Motion or a Motion seeking the approval of a broker to market and sell its assets—both of which are Events of Default under the Interim Order.  While the Proposed Final Cash Collateral Order (the "Proposed Final Order") has not yet been filed, the Objecting Parties reserve all rights regarding the Proposed Final Order and assume that the Events of Default would remain consistent.

6.    The Cash Collateral Motion improperly seeks to foreclose the ability for any Committee of Unsecured Creditors from a meaningful investigation of Bedrock's purported liens and claims and does not provide any funding for litigating claims that may exist against Bedrock,

which would be released under the Settlement Motion.  Moreover, under the Cash Collateral

Motion, the Debtors have agreed to waive their rights under section 506(c) of the Bankruptcy Code

to surcharge Bedrock for costs and expenses of preserving and disposing of the Debtors' assets

and to grant Bedrock new liens on previously unencumbered assets of the Debtors.  As with the

Settlement Motion, the Cash Collateral Motion disproportionately benefits Bedrock while giving

up, liening up, or releasing value that would otherwise benefit the estates.

## II.   ARGUMENT

7.      In this case, Cash Collateral Motion and the postpetition financing that it proposes

should not be approved as its purpose is to improve the position of Bedrock while providing for

Chapter 11 Cases that inure to the benefit of Bedrock.  *See, e.g., In re Aqua Assocs.,* 123 B.R. 192,

195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary

benefit of a party other than the debtor. . . ."); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 37

(Bankr. S.D.N.Y. 1990) ("[A] proposed financing will not be approved where it is apparent that

the purpose of the financing is to benefit a creditor rather than the estate."); *In re Tenney Vill. Co.,*

*Inc.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (explaining that the court would not approve debtor-

in-possession financing where "[u]nder the guise of financing a reorganization, the Bank would

disarm the Debtor of all weapons usable against it for the bankruptcy estate's benefit, place the

Debtor in bondage working for the Bank, seize control of the reins of reorganization, and steal a

march on other creditors in numerous ways. The Financing Agreement would pervert the

reorganizational process from one designed to accommodate all classes of creditors and equity

interests to one specially crafted for the benefit of the Bank and the Debtor's principals who

guaranteed its debt. It runs roughshod over numerous sections of the Bankruptcy Code.").

4

8.     The Cash Collateral Motion would further cement the Settlement Agreement, while at the same time materially enhancing and solidifying Bedrock's collateral position, restricting a Committee's ability to investigate or challenge Bedrock's liens in any way, and requiring the Debtors to fund Bedrock's professional fees—all of which should be scrutinized more closely in light of the overlay that Bedrock is an insider of the Debtors that engaged in unusual transactions with the Debtors to provide for the turnover of the collateral on the eve of the Debtors' bankruptcy filing.  There is no justification for the sweeping treatment to provide Bedrock with releases and enhanced collateral positions, which are in the best interests of *Bedrock—not the estates.*

### A.     <u>The Adequate Protection Provided to Bedrock is Excessive</u>

9.     Under section 363(p)(1) the Debtors have the burden of proof regarding issues of adequate protection.  11 U.S.C. § 363(p)(1); *Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re Hari Ram, Inc.*, 507 B.R. 114, 120 (Bankr. M.D. Pa. 2014).

10.     "The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when the debtor-in-possession is using the collateral."  *In re Wythe Berry Fee Owner LLC*, Case No. 22-11340, 2023 Bankr. LEXIS 645, *16 (Bankr. S.D. N. Y. Mar. 13, 2023) (citing *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest.").

11.     The existence of an equity cushion may, in and of itself, constitute adequate protection for an over-secured creditor.  *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992); *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) ("The existence of an equity cushion alone may constitute adequate protection."); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) (same); *In re Reading Tube Indus.*, 72 B.R. 329,333

(Bankr. E.D. Pa. 1987) ("A debtor may demonstrate adequate protection by proving the existence of... an equity cushion").  Determinations regarding adequate protection are fact-specific and are made on a case by case basis.  *See Resolution Trust Corp. v. Swedeland Dev. Group (In re Swedeland Dev. Group)*, 16 F.3d 552, 564 (3d Cir. 1994); *Mbank Dallas, NA. v. O'Connor (In re O'Connor),* 808 F. 2d 1393, 1396 (10th Cir. 1987); *In re Martin,* 761 F.2d 472 (8th Cir. 1985).

12.     Furthermore, if a lenders' collateral is not diminishing as a result of its use, nothing is required for adequate protection.   *In re Pursuit Athletic Footwear, Inc.,* 193 B.R. 716 (Bankr. D. Del. 1996) (approving use of cash collateral where debtor agreed to grant creditor replacement lien and there had been no diminution in the value of the collateral); *Save Power Ltd v. Pursuit Athletic Footwear (In re Pursuit Athletic Footwear)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In T.H.B. Corp.,* 85 B.R. 192, 194 (Bankr. D. Mass 1988); *In re Dynaco Corp.,* 162 B.R. at 394("If the debtors make a solid showing that their continued operation of their business during the relevant period will pose no serious danger of such a decline, there is no need for any additional adequate protection. . .")**.**

13.     The Debtors in this case have gone beyond guarding against a diminution in Bedrock's collateral, have exceeded the bounds of adequacy, and have opted to significantly advance Bedrock's position in connection with the Cash Collateral Motion.   Under the Cash Collateral Motion Bedrock would receive, *inter alia*—(i) payment of its professional fees; (ii) validation of the prepetition debt subject to a limited challenge period that has a budget only for the investigation but not prosecution of lien challenges; (iii) releases for all other claims against Bedrock; (iv) a lien on all unencumbered assets; and (v) a section 506(c) surcharge waiver for the cost of maintaining and disposing of Bedrock's collateral for the duration of these cases.

14. Additionally, the adequate protection and the relief under the Cash Collateral Motion is more egregious when one considers that Bedrock's purported liens may be subject to avoidance, partial avoidance, equitable subordination, or recharacterization based on the collusive conduct and actions taken by Bedrock that are further described in the Settlement Motion Objection.

    **B.**    **Objecting Parties' Demand for Adequate Protection**

15. The Objecting Parties have asserted certain liens on the property that is also subject to Bedrock's purported collateral and therefore demands adequate protection and to be provided with the reporting that is required under any Proposed Final Order.

16. The Objecting Parties assume, although no Proposed Order has been filed, that the Debtors would seek to carve out the liens held by the Objecting Parties from the definition of Permitted Prior Liens. *See* Interim Order, p. 5, n. 4.

17. Whether the Objecting Parties' asserted liens are permitted liens should not be determined in the Cash Collateral Order. The Cash Collateral Motion should instead preserve the status quo for other lienholders and should not finally determine the status of the Objecting Parties' liens. Moreover, the Cash Collateral Motion is the improper procedural device for such relief and provides no evidence regarding the priority of any asserted liens.

    **C.**    **Bedrock Is Not Entitled to  Payment of Its Professional Fees**

18. As part of the adequate protection, Debtors seek approval to pay all of the fees and expenses of Bedrock, ***including attorneys' fees, whether pre- or post-petition.***

19. As discussed in the Settlement Motion Objection, Bedrock engaged in a contrived series of actions which including noticing a default and acceleration of the loan based on a $150,000 missed interest payment, entering into a Forbearance Agreement that provided for

Bedrock to receive $2 million in proceeds and granted Bedrock additional liens, paying Bedrock a "restructuring fee" of $500,000 in connection with a *six day* forebearance, strictly foreclosing on the Equipment, and entering into an Equipment Lease that provided for monthly payments in an amount that was 2.8 times the interest payment that was cause for the initial default.  Under the Cash Collateral Motion **the legal fees and expenses of Bedrock for its prepetition question to extract value from the Debtors would be paid by the Debtors.**  The payment of prepetition attorney's fees in this case—specifically for an insider party—is inappropriate.

20.     The Court should deny this protection for Bedrock's postpetition attorney's fees as well.    Furthermore, for the postpetition fees, although, section 506(b) of the bankruptcy permits payment of "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose" it only does so to the extent that such creditors are oversecured.  *Bronze Group, Ltd. v. Sender (In re Hedged-Investments Assocs.)*, 293 B.R. 523, 526 (Bankr. D. Colo. 2003) ("Therefore, creditors may only recover post-petition fees and costs when their claims are oversecured.") (citing *See Wade v. Hatcher (In re Hatcher)*, 208 B.R. 959, 964 (B.A.P. 10th Cir. 1997) ("Under § 506(b) . . . secured creditors are entitled to post-petition attorney's fees provided that (i) *the creditor is oversecured*, (ii) the fees are reasonable, and (iii) the fees are provided for in the agreement between the parties." (emphasis added)); *In re Welzel*, 275 F.3d 1308, 1317 (11th Cir. 2001); *In re Loewen Group Int'l, Inc.*, 274 B.R. 427 (Bankr. D. Del. 2002);  *In re Smith*, 206 B.R. 113, 115 (Bankr. D. Md. 1997); *In re Woodmere*, 178 B.R. 346, 356 (Bankr. S.D.N.Y. 1995); *In re Saunders*, 130 B.R. 208, 214 (Bankr. W.D. Va. 1991); *In re Sakowitz, Inc.*, 110 B.R. 268, 275 (Bankr. S.D. Tex. 1989); *In re Canaveral Seafoods, Inc.*, 79 B.R. 57, 58 (Bankr. M.D. Fla. 1987); *In re Mobley*, 47 B.R. 62, 63 (Bankr. N.D. Ga. 1985); 4 Collier on Bankruptcy P506.01, at 506-6 (Lawrence P. King ed., 15th ed. 2001) ("Section 506(b)

begins by stating that it applies in the context of an allowed secured claim that is secured by property that is greater in value than the claim amount.")).

21.     Furthermore, under the Bankruptcy Code, the filing of a bankruptcy petition relieves the debtor of non-bankruptcy obligations to pay professional fees to third parties unless and only to the extent that the Bankruptcy Code provides for such payments.  *See In re Loewen Group International, Inc.,* 274 B.R. at 445, n.36 (Bankr. D. Del. 2002) ("Although a contractual provision providing for the recovery of attorneys' fees and costs may enable an unsecured creditor to pursue recovery of such fees and costs in an action in state court, in the context of bankruptcy, the creditor's right to assert such claims is limited by the provisions of the Bankruptcy Code.").

22.     Neither Bedrock nor the Debtors have established that Bedrock's claims are oversecured, and therefore there is no reason why the Debtors' estate should become obligated to pay Bedrock's fees and expenses as part of the Cash Collateral Motion.

### III.     RESERVATION OF RIGHTS

23.     The Objecting Parties reserve the right to make such other and further objections as may be appropriate once the Proposed Final Order is filed and do no waive and hereby preserve all of their rights, remedies and arguments with respect to such Proposed Final Order.

### IV.     CONCLUSION

24.     For the reasons set forth above, the Cash Collateral Motion should be denied.

**WHEREFORE**, Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC respectfully request that the Court deny the Cash Collateral Motion and grant such other relief as this Court deems fair and appropriate.

Dated:  April 10, 2025          */s/ Matthew G. Summers*
Wilmington, Delaware            Matthew G. Summers (No. 5533)
                                Margaret A. Vesper (No. 6995)
                                Erin L. Williamson (No. 7286)

9

BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
Email: summersm@ballardspahr.com
        vesperm@ballardspahr.com
        williamsone@ballardspahr.com

-and-

Mark G. Claypool
Bryan G. Baumann
KNOX MCLAUGHLIN GORNALL & SENNETT, P.C.
120 West Tenth Street
Erie, PA 16501
Telephone:  (814) 459-2800
Facsimile: (814) 453-4530
Email: mclaypool@kmgslaw.com
        bbaumann@kmgslaw.com

*Counsel for Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC*