## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KTRV LLC, *et al.*,[1] | Case No. 25-10601 (MFW) |
| Debtors. | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS AND PROVIDE BID PROTECTIONS, (III) APPROVING THE FORM AND MANNER OF SALE NOTICE, (IV) SCHEDULING AN AUCTION AND SALE HEARING, (V) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, (VI) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR, AND (VII) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned counsel, hereby move (the "Motion") this Court, for entry of an order, pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court District of Delaware (the "Local Rules"), and in support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of Brian Ryniker in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [Docket No. 15] and in further support of this Motion, the Debtors respectfully state as follows:

---

[1]     The Debtors in these chapter 11 cases, along with each the last four digits of each Debtor's tax identification number, are as follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The Debtors' service address is 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

## PRELIMINARY STATEMENT

Prior to filing for bankruptcy, the Debtors began marketing their assets, including their equipment. This marketing effort has continued since the Petition Date, as the Debtors work toward a sale of substantially all of their assets on an orderly but expedited basis.

By and through this Motion, the Debtors seek an order substantially in the form attached as **Exhibit A** hereto (the "Bidding Procedures Order"): (a) approving the Bidding Procedures (as defined in the Bidding Procedures Order) in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets"); (b) scheduling a related auction and hearing to consider approval of the sale (the "Sale Hearing"); (c) approving the form and manner of notice thereof; (d) approving the procedures related to the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, including notice of proposed cure costs; and (e) granting related relief.  Importantly, the Bidding Procedures include deadlines intended to dovetail with the separate auction process for the Debtors' equipment. Ultimately, the process set forth herein is intended to result in a hearing on or about June 12, 2025, to approve the sale of substantially all of the Debtors' assets, other than the equipment to be sold at auction.

At the June 12 hearing, the Debtors will seek entry of an order (or orders) authorizing and approving the sale(s) of the Assets free and clear of liens, claims, encumbrances, and interests, except as provided in the asset purchase agreement(s) of the Successful Bidder(s) (as defined in the Bidding Procedures), (b) authorizing and approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (c) granting related relief.

17280992/5

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules, to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. 8. The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code and rules 2002 and 6004 of the Bankruptcy Rules and Local Rule 6004-1.

4.      No request has been made for the appointment of a trustee or an examiner.

## BACKGROUND

5.      As more fully set forth in the First Day Declaration, KTRV, LLC is a Delaware holding company whose sole asset is its membership interest in Heritage Coal & Natural Resources, LLC ("HCNR"), a Pennsylvania Limited Liability Company.

6.      HCNR currently owns and operates five producing coal mines and related operations in Pennsylvania and Maryland.   Specifically, HCNR owns the following: (i) the Carlos site (located in Frostburg, MD) which is shipping and mining coal with a substantially reduced work crew, (ii) the Cabin Run site (located in Frostburg, MD) which is currently shipping coal and mining coal with a substantially reduced work crew, (iii) Summit #2 site (located in Meyersdale, PA) which is not currently mining or shipping coal, (iv) the Fisher #3 site (located in Meyersdale,

3

PA) which is not currently mining or shipping coal, and (v) the Saylor Hill #2 site (located in Meyersdale, PA) which is currently mining coal with a substantially reduced work crew. Additionally, HCNR owns an operating wash plant located in Meyersdale, PA. Additionally, HCNR owns a number of permits for other sites that are currently in cessation or reclamation. HCNR's main office is located in Meyersdale, PA.

7.      As more fully set forth in the First Day Declaration, the Debtors' bankruptcy cases were caused by a confluence of events, some of which are general economic issues related to the coal industry, and others were the directly and proximately result of the actions taken by the former owner of HCNR and prior owners, including vandalism and a maelstrom of litigation in numerous venues, all of which has further depleted the Debtors' limited assets.

8.      On March 30, 2025 (the "Petition Date"), the Debtors each filed voluntary bankruptcy petitions.

9.      The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.     An official committee of unsecured creditors (the "Committee") was appointed by the United States Trustee (the "U.S. Trustee") on April 15, 2025 [Docket No. 95].

A.      **The Debtors' Marketing Efforts**

11.     Both prior to and since the Petition Date, the Debtors have been marketing their assets. As set forth in the Debtors' Motion for an Order Authorizing the Consummation of Prepetition Transfers of Certain Assets and (ii) Granting Related Relief [Docket No. 140], prior to the Petition Date, the Debtors divested certain assets through arms' length, heavily negotiated transactions, including a wash plant and several permits in Maryland.

4

12.     Additionally, the Debtors have been marketing their Pennsylvania assets, including the wash plant, mines and related assets in Meyersdale, PA.   With respect to those assets, as well as the remaining Maryland asserts, as of the Petition Date, the Debtors had contacted over fifteen (15) potentially interested purchasers, and ten (10) parties had executed a nondisclosure agreement and were granted access to the confidential data or the data room established by the Debtors.

13.     The Debtors are in the process of finalizing the retention of Ritchie Bros. Auctioneers, Inc. ("Ritchie Bros.") to market and sell substantially all of the Debtors' equipment (the "Equipment"), which the Debtors understand will occur at an auction to begin on June 25, 2025.  This process will run in tandem with the process for the sale of the remainder of the Debtors' assets.

## RELIEF REQUESTED

14.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):[2]

> (a) approving the Bidding Procedures by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of the Assets;
>
> (b) approving the Debtors' ability to designate one or more Stalking Horse Bidders (as defined herein) and offer Bid Protections relating thereto;
>
> (c) approving the manner of the notice of the Auction (as defined herein), if any, and Sale Transaction(s) (the "Sale Notice") attached to the Bidding Procedures Order as **Exhibit 2**;
>
> (d) establishing certain dates and deadlines, including (i) the deadline for when the Debtors must actually receive binding bids from parties (the "Bid Deadline") and (ii) the Auction Date (as defined herein);
>
> (e) approving procedures (the "Assumption and Assignment Procedures") for the assumption and assignment of executory contracts and leases (the "Assigned Contracts"), including notice (the "Assigned Contracts Notice") of proposed cure

---

[2]     This summary is qualified in its entirety by the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order. All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings given to such terms in the Bidding Procedures. To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

17280992/5

amounts (the "Cure Amounts"), attached as **Exhibit 3** to the Bidding Procedures Order; and

(f) approving the form of the notice of successful bidder (the "Successful Bidder Notice") attached to the Bidding Procedures Order as **Exhibit 4**; and

(g) granting related relief.

15.     Additionally, the Debtors will seek entry of one or more orders (the "Sale Order") at the a hearing on or about June 12, 2025, or as soon thereafter as the Debtors may be heard (the "Sale Hearing"): (a) authorizing and approving the Sale Transaction(s) with the Successful Bidder(s) on the terms substantially set forth in the Successful Bid(s); (b) authorizing and approving the sale of the Debtors' Assets free and clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, encumbrances, and other interests (collectively, the "Encumbrances") to the extent set forth in an asset purchase agreement with any Successful Bidder(s); and (c) authorizing the assumption and assignment of executory contracts and unexpired leases as set forth in an asset purchase agreement with any Successful Bidder(s).

### A.    The Proposed Bidding Procedures

16.     The Debtors seek approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids in a fair, accessible, and expeditious manner. The Bidding Procedures facilitate the continuation of the prepetition marketing process to solicit interest in a sale of the Assets.

17.     The timeline set forth in the Bidding Procedures is calculated to balance the need to provide adequate notice to parties in interest and any person or entity interested in purchasing the Assets (a "Potential Bidder") with the need to run an efficient and expedient sale process, especially in light of the marketing conducted to date for the Assets. The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders

17280992/5

by encouraging prospective bidders to submit competitive, value-maximizing, all-cash bids, except for the right of Bedrock to credit bid, which is expressly preserved.

18.    The Debtors believe that the Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will confirm with finality the extent of the market for the Debtors' Assets, and will provide interested parties with sufficient opportunity to participate. Because the Bidding Procedures are attached as Exhibit 1 to the Bidding Procedures Order, they are not restated in their entirety herein, however, a summary of the Bidding Procedures is provided below. Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value and preserve the Debtors' right to modify the Bidding Procedures in accordance with their terms as necessary or appropriate to maximize value for the Debtors' estates.

19.    The following describes the salient components of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1:[3]

(a) Bid Requirements (Local Bankr. R. 6004-1(c)(i)(A), (B)). To be eligible to participate in the Auction, a party must submit a written offer for a Sale Transaction of some or all of the Debtors' Assets (each, a "Bid," and the party that submits a Bid, a "Bidder") that must (i) be determined by the Debtors to satisfy each of the conditions set forth in this section and (ii) be actually received by the Bid Notice Parties, on or before June 2, 2025 (as may be extended in accordance with the terms of the Bidding Procedures Order and the Bidding Procedures, the "Bid Deadline"). A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(i)    **Executed Agreement**: Each Bid must include (a) an offer letter, signed by an authorized representative of the Bidder, pursuant to which the Bidder offers to consummate the Sale Transaction contemplated by such Bid on the terms set forth in the Modified APA together with (b) an asset purchase agreement, which must be based on the form asset purchase agreement (the "Form APA") supplied by the Debtors in a designated data room or, if applicable, the Stalking Horse APA (as defined below), signed by an

---

[3]    The following summary is provided for convenience purposes only. To the extent any of the terms described below are inconsistent with the Bidding Procedures, the Bidding Procedures control in all respects. Capitalized terms used in this summary but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

17280992/5

authorized representative of the Bidder, pursuant to which the Bidder agrees to consummate such proposed Sale Transaction for the Assets referenced therein (together with all ancillary documents and schedules contemplated thereby, a "Modified APA"). A Bid must also include a redline of the Modified APA marked against the Form APA (and all applicable ancillary documents and schedules contemplated thereby) to show all changes requested by the Bidder with respect to the Form APA. Each Modified APA must provide a commitment to close the Sale Transaction contemplated by such Modified APA within a time frame acceptable to the Debtors after all closing conditions set forth in such Modified APA are met (other than those which are to be satisfied at the closing of the transactions contemplated by such Modified APA).

(ii)     **Purchase Price**: Each Bid must clearly set forth the terms of any proposed Sale Transaction, including and identifying the proposed Sale Transaction consideration, which must be all cash.

(iii)    **Good Faith Deposit**: Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash purchase price contained in the Modified APA, before any adjustments to the purchase price, to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the cash purchase price contemplated by such Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price.

(iv)    **Good Faith Offer**: Each Bid must represent an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined below)

(v)     **Joint Bids**: The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

(vi)    **Purchased Assets and Assumed Liabilities**: Each Bid must clearly provide which of the Assets the Bidder seeks to acquire and which of the assumed liabilities the Bidder agrees to assume. With respect to any bids for less than all or substantially all of the Debtors' Assets, the Debtors reserve the right to request an allocation of the purchase price among the Assets the Bidder seeks to acquire and the assumed liabilities the Bidder agrees to assume.

(vii)   **Equipment and Allocation**:  Each Bid must specifically identify all equipment to be purchased, and an allocation of the purchase price for each piece of equipment.

(viii)  **Designation of Assigned Contracts and Leases**: Subject to the terms of the Modified APA, each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to be assumed

and assigned to the Bidder at the closing of the Sale Transaction contemplated by such Bid.

(ix)  **Corporate Authority**: Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Sale Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the equity holder(s) of such Bidder and any other governing body of the Bidder that is required to approve the Sale Transaction.

(x)  **Disclosure of Identity of Bidder**: Each Bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such Bid.

(xi)  **Proof of Financial Ability to Perform**: Each Bid must include written evidence that the Debtors conclude demonstrates that the Bidder has the necessary financial ability to (a) timely close the Sale Transaction contemplated by such Bid within a time frame acceptable to the Debtors after all closing conditions set forth in the Modified APA are met and (b) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction. Such information must include, inter alia, the following:

(A)  Contact names and numbers for verification of financing sources, if any;

(B)  Written evidence of the Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments, or otherwise available funds (including through the posting of an irrevocable letter of credit or customary debt or equity financing commitment letters that comply with the requirements of this sub-paragraph xi.B or sub-paragraph xi.C below, as applicable, in each case, from reputable financial institutions) in an aggregate amount sufficient to pay the cash purchase price contemplated by such Bid, to pay for cure costs for contracts to be assumed and assigned in the Sale Transaction, and to satisfy all other obligations of the Bidder pursuant to the Modified APA ("Bidder's Obligations"); provided that, if the Bidder is an entity that is specially formed for the purpose of effectuating the Sale Transaction or if the Bidder intends to raise any equity financing to fund any portion of Bidder's Obligations, then the Bidder must furnish to the Debtors a fully executed and effective equity commitment letter or guarantee ("Bidder

Support") (which Bidder Support shall remain outstanding until at least sixty (60) days after the date of entry of the Sale Order (or the "outside date" in the Modified APA, if later), subject to a potential further extension as set forth herein or therein) from its equity holders or other affiliated entities with respect to the portion of the Bidder's Obligations that are not to be paid with cash on hand (which Bidder Support may not be subject to any conditions other than the satisfaction of the conditions set forth in the Modified APA and shall include third party beneficiary language in favor of the Debtors entitling the Debtors to enforce such Bidder Support directly against the counterparties) and provide written evidence that its equity holders or other affiliated entities providing the Bidder Support have the resources and ability to finance such portion of the Bidder's Obligations;

(C) Without limiting the requirements of sub-paragraph xi.B above, if the Bidder intends to raise any debt financing to fund any portion of the Bidder's Obligations, the Bid must include fully executed and effective debt financing commitment letter(s), which letter(s) shall (i) not be subject to any internal approvals, credit committee approvals, or diligence conditions, (ii) be in customary form, and (iii) remain outstanding until sixty (60) days after the date of entry of the Sale Order (subject to a potential further extension as set forth herein); and

(D) Any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its Bidder Support) has the ability to close the Sale Transaction on the terms set forth in the Modified APA.

(xii) **Adherence to Bidding Procedures**: By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xiii) **Regulatory and Third-Party Approvals**: Each Bid must set forth each government, licensing, regulatory, and other third-party approval or filing required to be obtained or made by the Bidder or its Bidder Support, and each waiting period required to have expired or terminated, for the Bidder to consummate the Sale Transaction, and the time period within which the Bidder expects to receive such approvals, to make such filings or such waiting periods to expire or terminate (and in the case that receipt of any such approval, the making of any such filing, or the expiration or termination of any such waiting period is expected to take more than thirty (30) days following execution and delivery of the Modified APA, those

10

actions the Bidder will take to ensure receipt of such approval(s), the making of such filing(s), or the expiration or termination of such waiting period(s) as promptly as possible).

(xiv) **Contact Information and Affiliates**: Each Bid must provide the contact information for the Bidder and full disclosure of any affiliates of the Bidder.

(xv) **Contingencies and Other Provisions**: Each Bid shall not contain any escrow arrangements, indemnities, or adjustments to the purchase price. Without limiting the immediately preceding sentence, each Bid shall not include any conditions or contingencies relating to financing (including, for the avoidance of doubt, any conditionality, or limitations on specific performance, relating to any financing contemplated by sub-paragraph xi.B above), internal approvals, or the absence of any material adverse effect.

(xvi) **Contingencies Regarding Due Diligence**: Each Bid shall not include any conditions or contingencies relating to due diligence.

(xvii) **Acknowledgement of Independent Review**: Each Bid must include a written acknowledgement and representation that the Bidder: (a) has had an opportunity to conduct any and all due diligence prior to making its Bid; (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets, or the physical condition of the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Modified APA.

(xviii) **Irrevocable**: Each Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Bidder is not selected as the Back-Up Bidder, provided that if a Bid is accepted as the Successful Bid or the Back-Up Bid, such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

(xix) **Compliance with Diligence Requests**: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors.

(xx) **Back-Up Bid**: Each Bid shall provide that the Bidder will serve as back-up bidder if the Bidder's Bid is selected as the next highest and best bid after the Successful Bid (as defined below) and will remain irrevocable in accordance with the terms and conditions of these Bidding Procedures (the "Back-Up Bid").

(xxi) **Consent to Jurisdiction**: Each Bidder and its Bidder Support (if applicable) must (a) consent to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of

documents relating to any Sale Transaction; (b) waive any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction; and (c) consent to the entry of a final order or judgment in any way related to the Debtors, these Chapter 11 cases, the Bidding Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(xxii) **Disclaimer of Break-Up Fees and Expense Reimbursement**: Except as otherwise provided in the Bidding Procedures with respect to a potential Stalking Horse Bidder (as defined therein), each Bid must not, and must acknowledge that such Bid shall not, entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement (including legal fees) and, by submitting the Bid, the Bidder waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

(xxiii) **Acknowledgement of Remedies**: Each Bid shall include a written acknowledgement from the Bidder that, in the event of the Bidders' breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform, and pursue all other available legal and equitable remedies.

(xxiv) **Acknowledgement of No Collusion**: Each Bid shall include a written acknowledgement from the Bidder that it has not (a) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein or (b) taken any other action to prevent a transparent and competitive auction process.

(b)  <u>The Auction</u> (Local Bankr. R. 6004-1(c)(ii)). If at least two Qualified Bids (including any Bid by a Stalking Horse Bidder) are received by the Bid Deadline with regard to any particular Asset, the Debtors will conduct an auction no later than June 5, 2025, at 10:00 a.m., (prevailing Eastern Time) in person at the office of Morris James, LLP, 500 Delaware Ave. Wilmington, DE 19801 and/or via remote video at the Debtors' election.  If held, the Auction proceedings will be transcribed. In the event the Debtors determine an Auction shall be held, the Debtors shall file notice on the docket and send written notice (email sufficient) of the date, time, and place of the Auction to the Qualified Bidders no later than one (1) business day before such Auction, and will post notice of the date, time, and place of the Auction no later than one (1) business day before such Auction on their restructuring website, **https://cases.stretto.com/KTRV/**. Only the following parties, and their respective professionals, principals, representatives, and counsel, may attend the Auction: (a) the Debtors; (b) the Committee; (c) Bedrock Industries

12

Investco 1 LLC; (d) the United States Trustee for the District of Delaware (the "U.S. Trustee"); (e) any Qualified Bidder; and (f) any other parties that the Debtors deem appropriate.

(c)    Bidding Increments (Local Bankr. R. 6004-1(c)(i)(C)). Any Overbid for all or substantially all of the Debtors' Assets after and above the Auction Baseline Bid shall be made in increments valued at not less than $100,000. The Debtors shall determine the minimum bid increments for any particular Asset or subset of Assets if applicable.

(d)    Back-Up Bidder (Local Bankr. R. 6004-1(c)(i)(E)). If a Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "Successful Bid Failure"), the Debtors will be authorized, without further order of the Court to consummate the Sale Transaction contemplated by the applicable Back-Up Bid with the applicable Back-Up Bidder; provided that the Debtors shall provide prompt notice of such Successful Bid Failure and the Debtors shall post a notice on the docket of the Chapter 11 cases regarding the Successful Bid Failure and the consummation of such Sale Transaction with the applicable Back-Up Bidder. In the case of a Successful Bid Failure, the Successful Bidder's deposit shall be forfeited to the Debtors or returned to the applicable Successful Bidder in accordance with the terms of the terminated Modified APA. The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder following a Successful Bid Failure) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, or the Modified APA, as applicable.

(e)    Highest or Otherwise Best Bid. The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, after consultation with the Committee, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration, which for the avoidance of doubt must be cash consideration except for proposals by an Acceptable Bidder to assume certain liabilities; (ii) the number, type, and nature of any changes to the Form APA requested by each Bidder, including the Assets acquired; (iii) the extent to which such modifications are likely to delay closing of the Sale Transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; (v) any contingencies or conditions to closing the Sale Transaction contemplated by such Qualified Bid; (vi) the likelihood of the Bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (g) the tax consequences of such Qualified Bid; and (h) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances (collectively, the "Bid Assessment Criteria").

(f)    Reservation of Rights (Local Bankr. R. 6004-1(c)(i)(D)). Except as otherwise provided in the Bidding Procedures Order, the Debtors further reserve the right as the Debtors may reasonably determine to be in the best interest of the Debtors'

13

estates to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid (or Qualified Bids) is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all potential bidders; (vi) make non-material modifications to the Bidding Procedures; and (vii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bidding Procedures, the "Auction Rules"), in their reasonable business judgment, after consultation with the Committee, will better promote the goals of the bidding process and are not inconsistent with any Court order or the Bankruptcy Code; provided that nothing herein shall limit any party in interest's right to file an objection with the Court with respect to any Auction Rules (other than the Bidding Procedures). Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; provided, however, that the Debtors shall promptly provide any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bidding Procedures, the Debtors shall seek approval from the Court for such action or inaction.

(g)     Potential Stalking Horse (Local Bankr. R. 6004-1(c)(i)(C)). The Debtors may, pursuant to these Bidding Procedures, (i) designate one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Assets a stalking horse bidder (each, a "Stalking Horse Bidder"), whose Qualified Bid shall serve as a stalking horse bid (a "Stalking Horse Bid"), and (ii) execute, subject to higher or otherwise better offers consistent with these Bidding Procedures, one or more purchase agreements memorializing the proposed transaction set forth in the Stalking Horse Bid (a "Stalking Horse APA"), which may include a break-up fee of or no more than three percent (3.0%) of the total cash consideration payable under such Stalking Horse APA, inclusive of any expense reimbursement (the "Bid Protections") on or before May 19, 2025 (the "Stalking Horse Bidder Designation"). To the extent the Debtors designate more than one Stalking Horse Bidder pursuant to the Bidding Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Assets. To the extent the Debtors, consistent with these Bidding Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in a corresponding notice designating such Stalking Horse Bidder (the "Stalking Horse Notice"). A Stalking Horse Notice, if filed, shall also include: (a) the identity of the Stalking Horse Bidder; (b) the amount of the Stalking Horse Bid; (c) a copy of the Stalking Horse APA; (d) the proposed Bid Protections to be provided to the Stalking Horse Bidder; and (e) a declaration in support of the proposed Bid Protections, which includes whether the Stalking Horse Bidder has any connection

14

with the Debtors other than that which arises from the Stalking Horse Bid. Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice or (ii) the designation of the Stalking Horse Bidder (a "Stalking Horse Objection") shall be filed and actually received by the appropriate notice parties no later than May 24, 2025 at 4:00 p.m. (prevailing Eastern Time). If a timely Stalking Horse Objection is filed, the Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection on not less than three (3) calendar days' notice. Absent any timely Stalking Horse Objection, the Court may approve the Bid Protections set forth in the Stalking Horse Notice and the designation of the Stalking Horse Bidder without further hearing. If the designation of a Stalking Horse Bidder is approved, any Modified APA may be based on the Stalking Horse APA.

> **B.**     **The Proposed Schedule.**

20.     Below is a summary of the proposed key dates and deadlines, which remain subject to the Court's schedule.

| Date | Event | Description |
|------|-------|-------------|
| May 5, 2025 | Bidding Procedures Hearing and Order | Date on which the Court shall hold a hearing on the Bidding Procedures. |
| May 9, 2025 | Sale Notice and Publication Notice Deadline | Deadline by which the Debtors shall (i) serve the Sale Notice upon the Sale Notice Parties, and (ii) cause the Publication Notice to be published. |
| May 19, 2025 | Stalking Horse Designation Deadline | Deadline by which the Debtors must designate one or more Stalking Horse Bidders (if the Debtors so choose to designate a Stalking Horse Bidder). |
| May 24, 2025 | Stalking Horse Objection Deadline | Deadline by which objections to the Stalking Horse Bidder Designation (if any) must be filed with the Court and served so as to be **actually received** by the appropriate notice parties. |
| June 2, 2025 | Bid Deadline | Deadline for when the Debtors must **actually receive** binding bids from parties. |

| June 5, 2025 | Auction (if any) | Date and time at which an Auction for the Assets will be conducted (if any). |
|---|---|---|
| June 5, 2025 | Successful Bidder and Contract Assignment Notice Deadline | As soon as is reasonably practicable after either the Bid Deadline or conclusion of the Auction (if any), the Debtors shall serve the Notice of Successful Bidder and the Contract Assignment Notice upon the appropriate notice parties. |
| June 6, 2025 | Objection Deadline | All objections to the Sale <u>other than</u> the conduct of the Auction, the particular terms of any proposed Sale Transaction in a Successful Bid, the identity of the Successful Bidder(s) or Back-up Bidder(s), or adequate assurance of future performance of the Successful Bidder(s). |
| June 10, 2025 | Sale and Contract Assignment Objection Deadline | Deadline for objections to be actually received by the Debtors with respect to the conduct of the Auction, the particular terms of any proposed Sale Transaction in a Successful Bid, the identity of the Successful Bidder(s) or Back-up Bidder(s), or adequate assurance of future performance of the Successful Bidder(s). |
| June 12, 2025 | Sale Hearing | Date on which the Court shall hold a hearing to consider the Sale Transaction. |
| June 19, 2025 | Sale Closing | Deadline to consummate the Sale Transaction |

21.     The Debtors believe that this timeline, as required to maintain liquidity through these Chapter 11 cases, provides them with an opportunity to complete a thorough marketing

17280992/5

process for the Assets. In light of the Debtors' prepetition efforts to date—reaching out to multiple

parties over with respect to the marketing processes; preparing multiple process letters and

confidential information presentations; populating a data room with extensive information;

providing access to such materials to potentially interested parties that signed NDAs, including

tours of the facilities, where requested; and responding to further diligence requests; the Debtors

have determined that the proposed schedule is in the best interests of the Debtors' estates, will

assist in establishing whether and to what extent a market exists for the Assets, will provide

interested parties with sufficient opportunity to participate in any sale transaction and, ultimately,

will result in the highest and best bid for the underlying Assets under the circumstances.

### C.      Form and Manner of Sale Notice.

22.     The Debtors are seeking approval of the form of the Sale Notice, as attached to the

Bidding Procedures Order as Exhibit 2, to be filed and served as soon as reasonably practicable

following entry of the Bidding Procedures Order. The Debtors will cause the Sale Notice,

substantially in the form attached as Exhibit 2 to the Bidding Procedures Order, to be served on

the following parties or their respective counsel, if known: (a) the U.S. Trustee; (b) counsel to the

Bedrock Industries Investco 1 LLC; (c) counsel to the Committee; (d) all parties who have

expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably

believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the

Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h)

each governmental agency that is an interested party with respect to the proposed Sale Transaction;

and (i) all parties that have requested or that are required to receive notice of the proposed Sale

Transaction pursuant to Bankruptcy Rule 2002, (collectively, the "Sale Notice Parties").

23.     On the same day as that the Debtors serve the Sale Notice, or as soon as reasonably practicable thereafter, the Debtors will provide notice of the Sale Hearing through publication of the Sale Notice on the Case Website and will also publish the Sale Notice, with any modifications necessary for ease of publication, once in The New York Times (national edition), and once in the Daily American to provide notice to any other potential interested parties (the "Publication Notice").

24.     The Debtors respectfully submit that the Sale Notice and Publication Notice are reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale Transaction, including: (a) the date, time, and place of the Auction; (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale Transaction and entry of the Sale Order, and the date, time, and place of the Sale Hearing; and (d) a description of the Sale Transaction as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale Transaction proceeds.

25.     The Debtors further submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice and the Assigned Contracts Notice substantially in the form attached as Exhibit 3 to the Bidding Procedures Order (where applicable), as provided for herein, constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtors propose that no other or further notice of the Sale Transaction shall be required. Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice.

**D.      Form and Manner of the Successful Bidder Notice.**

26.      The Debtors are seeking approval of the form of the Successful Bidder Notice, as attached to the Bidding Procedures Order as Exhibit 4, to be filed and served as soon as reasonably practicable after the close of the Auction. The Debtors respectfully submit that the Successful Bidder Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale Transaction, including: (a) the identity of the Successful Bidder and any Back-Up Bidder; and (b) the amount of the Successful Bid and any Back-Up Bids. The Debtors will also publish the Successful Bidder Notice on the Case Website.

**E.      Form and Manner of the Assigned Contracts Notice.**

27.      The Debtors seek entry of the Assumption and Assignment Procedures to facilitate the fair and orderly assumption and assignment of the Assigned Contracts in connection with the Sale Transactions. Because the Bidding Procedures Order sets forth the Assumption and Assignment Procedures in detail, they are not restated herein. Generally, however, the Assumption and Assignment Procedures: (a) outline the process by which the Debtors will serve notice to all counterparties to the Assigned Contracts regarding the proposed assumption and assignment and related cure amounts, if any, and informing such parties of their right and the procedures to object thereto; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Assigned Contracts to the extent necessary. The Assigned Contracts Notice is attached as Exhibit 3 to the Bidding Procedures Order.

**BASIS FOR RELIEF**

A.    **The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.**

28.    A debtor's business judgment is entitled to substantial  deference with respect to the procedures to be used in selling an estate's assets. See, e.g., In re Culp, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize . . . sale . . . of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.' If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999)); In re Schipper, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification[.]'" (citation omitted)); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (citing In re Schipper); see also In re Integrated Res. Inc., 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

29.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. See In re Adams Res. Expl. Corp., No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors."); In re Mushroom Transp. Co., 382 F.3d 325, 339 (3d Cir. 2004) (debtor in possession "had a fiduciary duty to protect and maximize the estate's assets"); In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); In re Food Barn Stores, Inc., 107 F.3d 558, 564–65 (8th Cir. 1997) (In bankruptcy sales,

"a primary objective of the Code [is] to enhance the value of the estate at hand[.]"); Integrated Res. 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (alteration in original) (citation omitted).

30.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. See, e.g., In re Dura Auto, Sys., No. 06-11202 (KJC) at 90 (Bankr. D. Del. 2007) (bidding procedures "enhance[ing] competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales"); Integrated Res., 147 B.R. at 659 (Bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets[.]"); In re Fin. News Network, Inc., 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets are to be enforced strictly [to] provide an adequate basis for comparison of offers, and to provide for a fair and efficient resolution of bankrupt estates").

31.    The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets. The proposed Bidding Procedures will allow the Debtors to conduct the sale process in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability to close a transaction. In sum, the Bidding Procedures provide the Debtors with the opportunity to select the highest or otherwise best offer from among competing bids for the completion of the

Sale Transaction. As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair, reasonable, and at or above market.

32.     Accordingly, for all of the foregoing reasons, the Debtors believe that the Bidding Procedures: (a) will encourage robust bidding for the Assets; (b) are consistent with other procedures previously approved by courts in this District; and (c) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and should be approved.

33.     The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by this Court. See, e.g., In re Vyaire Medical, Inc., No. 24-11217 (BLS) (Bankr. D. Del. Jul. 11, 2024); In re Yellow Corp., No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023); In re PGX Holdings, Inc., No. 23-10718 (CTG) (Bankr. D. Del. Aug. 4, 2023); In re SiO2 Med. Prods., Inc., No. 23-10366 (JTD) (Bankr. D. Del. Apr. 25, 2023); In re Lucira Health, Inc., No. 23-10242 (MFW) (Bankr. D. Del. Mar. 27, 2023).

**B.     The Form and Manner of Service of the Sale Notice Should Be Approved.**

34.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one (21) days' notice of the Sale Hearing. Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the relevant Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

35.     As noted above, as soon as reasonably practicable following entry of the Bidding Procedures Order, the Debtors will (a) serve the Sale Notice upon the Sale Notice Parties and (b) the Debtors will provide notice of the Sale Hearing through publication of the Sale Notice on the

17280992/5

Case Website and the Publication Notice.

36. The Debtors submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice.

**C.    The Bid Protections Have a Sound Business Purpose and Should be Approved.**

37. The Debtors are also seeking authority to designate one or more Stalking Horse Bidders and offer Bid Protections to each such Stalking Horse Bidder. Public auctions held in Chapter 11 cases customarily use a stalking horse, which can maximize value by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." Official Committee of Unsecured Creditors v. Interforum Holding LLC, No. 11-CV-219, 2011 WL 2671254 at *1 n. 1 (E.D. Wis. July 7, 2011). Stalking horse bidders virtually always require inducements in exchange for "setting the floor at auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." Id. (citation omitted). Offering bid protections such as break-up fees to stalking horse bidders has become an established practice in Chapter 11 cases.

38. Break-up fees and other forms of bid protections are a normal and, in many cases, necessary component of significant sales conducted in chapter 11. Integrated Res., 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can be *necessary* to discharge the directors' duties to maximize value.").

Specifically, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking." In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); see also Integrated Res., 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

39. As a result, courts routinely approve such bid protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. See In re Energy Future Holdings Corp., 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees. . . depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate.") (quoting In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 535 (3d Cir. 1999)) (alterations in original); In re Reliant Energy Channelview LP, 594 F.3d 200, 206 (3d Cir. 2010) (same). Allowing the Debtors to offer Bid Protections to one or more Stalking Horse Bidders will benefit the Debtors' estates and creditors by setting a floor for further bidding likely to increase the consideration ultimately given in exchange for the Debtors' Assets.

40. In the Third Circuit, bid protections, such as those proposed here, are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. See, e.g., Energy Future, 904 F.3d at 313 ("[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503."); Women First Healthcare, Inc., 332 B.R. 115, at 121–23 (Bankr. D. Del. 2005) (holding that the general standard used for all administrative expenses applies to bid protections). Thus, the "allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." Reliant Energy, 594 F.3d at 206

(internal quotations omitted) (quoting O'Brien, 181 F.3d at 535).

41.    Here, the flexibility to offer Bid Protections—which may include a break-up fee that is limited under the Bidding Procedures to no more than 3.0% of the total cash consideration payable under a Stalking Horse APA, inclusive of any expense reimbursement—is critical to the Debtors' ability to obtain the commitment of one or more Stalking Horse Bidders. To qualify as a Stalking Horse Bidder, a Qualified Bidder must expend substantial time and resources negotiating, drafting, and performing due diligence activities while also subjecting its Qualified Bid to Court approval and potential overbids by third parties. Furthermore, any Bid Protections offered to a Stalking Horse Bidder will have been negotiated in good faith, at arm's length, and with significant give-and-take. By preserving the flexibility to offer Bid Protections, the Debtors ensure their estates can realize the benefit of a transaction with one or more Stalking Horse Bidders without foreclosing third parties from submitting overbids at the Auction. To the extent any party objects to the Bid Protections, such party's ability to object is preserved, since there will be an objection deadline following the filing of the Stalking Horse Notice and an opportunity for a hearing.

42.    The Bid Protections provided to any Stalking Horse Bidder (a) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, and (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed Sale Transaction, the commitments that have been made, and the efforts that have been and will be expended by any Stalking Horse Bidder.

43.    If the Court does not approve Bid Protections, the Debtors may struggle to attract Stalking Horse Bidders, jeopardizing the outcome of the Auction and a successful disposition of

the Debtors' estates. Further, if the Debtors ultimately pay the break-up fee included in Bid Protections under the Stalking Horse APA, it will be because the Debtors have received superior offers for the Assets in a successful Auction. In short, the proposed Bid Protections constitute a "fair and reasonable percentage of the proposed purchase price" and are "reasonably related to the risk, effort, and expenses of the prospective purchaser." <u>Integrated Res.</u>, 147 B.R. at 662.

44.     The Debtors respectfully submit that the Bid Protections are a sound exercise of their business judgment and are in the best interests of the Debtors, their estates, and all stakeholders. Accordingly, the Court should approve Bid Protections.

> **D.     The Assumption and Assignment Procedures Are Appropriate and Should Be Approved.**

45.     As set forth above, the Sale Transactions contemplate the assumption and assignment of contracts to the Successful Bidder arising from the Auctions, if any. In connection with this process, the Debtors believe it is necessary to establish the Assumption and Assignment Procedures by which: (a) the Debtors and counterparties to the executory contracts and unexpired leases of nonresidential property (the "<u>Contract Counterparties</u>") can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such Contract Counterparties can object to the assumption and assignment of contracts and/or related cure amounts.

46.     As set forth in the Bidding Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any contract be deemed to consent to the assumption and assignment of the applicable contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the sale order, along with the cure amounts identified in the contract notice. <u>See, e.g.</u>, <u>In re Boy Scouts of Am.</u>, 642 B.R. 504, 569 (Bankr. D. Del. 2022) ("The lack of objection of a [creditor] is also consensual for purposes of section 363 and . . . permissible under section 363(f)(2).");  <u>In re Tabone, Inc.</u>, 175 B.R. 855, 858 (Bankr. D.N.J. 1994)

(same); <u>Pelican Homestead v. Wooten (In re Gabel)</u>, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

47.     The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to parties to the executory contracts and leases, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof. Accordingly, the Debtors request that the Court approve the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

**E.    The Debtors Intend to Seek Approval of the Sale Transaction as an Exercise of Sound Business Judgment at the Sale Hearing.**

48.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. <u>See, e.g.</u>, <u>In re Martin</u>, 91 F.3d at 395 ("[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification."); (citing <u>In re Schipper</u>, 933 F.2d at 515); <u>Stephens Indus., Inc. v. McClung</u>, 789 F. 2d 386, 390 (6th Cir. 1986); <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1070 (2d Cir. 1983); <u>In re Telesphere Commc'ns, Inc.</u>, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); <u>In re Delaware & Hudson Railway Co.</u>, 124 B.R. 169, 176 (D. Del. 1991). The <u>Delaware & Hudson Railway</u> court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under <u>McClung</u> and <u>Lionel</u>, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a

> plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the Property; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

49.     The <u>Delaware & Hudson Railway</u> court further held that "[o]nce a court is satisfied there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." <u>Id.</u>

50.     Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith,' and in the honest belief that the action was in the best interests of the company." <u>In re S.N.A. Nut Co.</u>, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); <u>In re Filene's Basement, LLC</u>, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); <u>Integrated Res.</u>, 147 B.R. at 656; <u>In re Johns-Manville Corp.</u>, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions.").

51.     At the Sale Hearing, the Debtors intend to demonstrate that a sound business purpose exists for the sale free and clear of all encumbrances, due and adequate notice has been provided, the purchase price reflects fair value, and the Sale Transaction has been proposed in good faith without collusion or undue influence, and relief under Bankruptcy Rules 6004(h) and 6006(d) is warranted, among other things. The Debtors reserve the right to submit supplemental

materials, including declarations, in connection with the Sale Hearing.

**F.      Right to Credit Bidding is Preserved**

52.      Bedrock Industries Investco 1 LLC ("Bedrock") is a creditor with a claim in excess

of $6 million,[4] with a perfected security interest in substantially all of the Debtors' assets, including

its equipment.  The proposed Bidding Procedures limit consideration of Bids to all cash Bids, other

than the right of Bedrock Industries Investco 1 LLC to credit bid under 11 U.S.C. § 363(k), which

is expressly reserved and preserved.

**Notice**

53.      The Debtors will provide notice of this motion to the following parties or their

respective counsel: (a) the U.S. Trustee;(b) counsel for the Committee, (c) all known holders of

liens, encumbrances, and other claims secured by the Debtors' assets; (d) the United States

Attorney (e) the Attorney General's Office for the State of Maryland; (f) the Attorney General's

Office for the Commonwealth of Pennsylvania; (g) the Internal Revenue Service; (h) all parties

who have expressed a written interest in some or all of the Debtors' assets; (i) all applicable state

and local taxing authorities; (j) each governmental agency that is an interested party with respect

to any Sale Transaction; and (k) any party that has requested notice pursuant to Bankruptcy Rule

2002. The Debtors submit that, in light of the nature of the relief requested, no other or further

notice need be given.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached

hereto as Exhibit A, (a) granting the relief requested herein and (b) granting such other relief as is

---

[4]      The amount of Bedrock's claim depends upon whether the settlement motion submitted by the Debtors and Bedrock to the Court requesting the authority to enter into a global settlement agreement, whereby Bedrock will return certain of the Debtors' foreclosed assets [Docket No. 26] (the "9019 Motion") is granted.  If the 9019 Motion is granted certain equipment that was foreclosed upon prior to the Petition Date will be returned to the bankruptcy estates, however, the amount of Bedrock's claim will revert to the amount it would have otherwise been had the strict foreclosure not occurred.

just and proper.

Dated:  April 23, 2025
Wilmington, Delaware

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Christopher M. Donnelly (DE Bar No. 7149)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
        emonzo@morrisjames.com
        cdonnelly@morrisjames.com

*Proposed Counsel to the Debtors
and Debtor-in-Possession*

17280992/5