**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KTRV LLC, *et al.*,[1]<br><br>     Debtors. | Chapter 11<br><br>Case No. 25-10601 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 5, 2025 at 11:30 a.m. (ET)**<br><br>**Objection Deadline: Extended to April 29, 2025 at 12:00 p.m. (ET) for the Committee**<br><br>Ref. No. 26 |

**PRELIMINARY OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF THE DEBTORS AND DEBTORS-IN-POSSESSION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 AND FED R. BANKR. P. 9019(B) AUTHORIZING AND APPROVING A GLOBAL SETTLEMENT WITH BEDROCK INDUSTRIES INVESTCO 1 LLC WITH RESPECT TO THE
STRICT FORECLOSURE AND FORECLOSED EQUIPMENT**

    The Official Committee of Unsecured Creditors (the "Committee") of KTRV LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by its undersigned proposed counsel, Frost Brown Todd LLP and Landis Rath & Cobb LLP, files this preliminary objection (the "Preliminary Objection") to the *Motion of the Debtors and Debtors-in-Possession for Order Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 9019(b) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC with Respect to the Strict Foreclosure and Foreclosed Equipment* [D.I. 26] (the "9019 Motion").[2]

---

[1] The Debtors in these chapter 11 cases, along with each the last four digits of each Debtors' tax identification number, are as follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The location of the Debtors' principal place of business and service address is 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

[2] Unless otherwise indicated, all capitalized terms herein shall have the meanings ascribed to them in the 9019 Motion.

**PRELIMINARY STATEMENT**

1. The Debtors bring the 9019 Motion for the purported purposes of (i) "revesting" in the Debtors equipment assets that were the subject of a strict foreclosure process initiated by Bedrock Industries Investco I LLC ("Bedrock"), an insider of the Debtors, (ii) "restoring" Bedrock to its alleged pre-foreclosure status as secured creditor, and (iii) enabling a court-approved, orderly and public process for the sale of the equipment. But contrary to those stated purposes, the proposed settlement in fact would provide Bedrock with a broad waiver, release, and discharge of all claims with respect to the Equipment, Forbearance Agreement and Strict Foreclosure (which have not yet been valued) and grant Bedrock a valuable stipulation regarding its own asserted liens and claims.

2. The Committee has been in place for a mere two weeks and is in the process of expeditiously evaluating the Debtors' assets and options for maximizing value for unsecured creditors. Yet even at this early juncture, the Committee has substantial concerns that Bedrock, a known insider, is exploiting the Debtors' chapter 11 cases by quickly implementing a prepetition settlement that grants Bedrock sweeping releases and benefits, all without disclosing any investigation into the value of released claims or the legitimacy of Bedrock's position, before any discovery can take place, and while effectively mooting any challenge period. In other words, the Debtors and Bedrock have orchestrated a process designed to insulate the proposed settlement from any real scrutiny.

3. Even in this short time frame, the Committee has seen enough to recognize that a process for the sale of the Debtors' assets is a sensible goal. However, such an acknowledgment does not necessitate or legitimize the extraordinary relief requested in the 9019 Motion. In particular, serious questions have been raised by other stakeholders regarding, among other

things, Bedrock's status as a secured creditor and the propriety of the foreclosure process. And the Committee has a duty to investigate and, if appropriate, pursue claims against, among others, Bedrock. The Debtors' Cash Collateral Motion (defined below) contemplates a period of 75 days to challenge Bedrock's alleged prepetition liens or transactions with the Debtors, but the releases proposed in the 9019 Motion would render such challenge period moot.[3] As a result, the Committee objects to the 9019 Motion as discussed more fully below.

## BACKGROUND

4.  On March 30, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court"). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have not yet filed their schedules or statements of financial affairs.[4]

5.  Also on the Petition Date, the Debtors filed their *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors and Debtors-in-Possession to (A) Use Cash Collateral and (B) Grant Adequate Protection to the Prepetition Lender; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [D.I. 14] (the "Cash Collateral Motion"). Contemporaneously herewith, the Committee is filing an objection to the Cash Collateral Motion. Rather than repeat the Factual Background section contained in that objection, the Committee incorporates that section by reference herein.

---

[3] As discussed in the Committee's objection to the Cash Collateral Motion, the challenge period currently proposed is insufficient, but even that period will be rendered moot by the relief sought in the 9019 Motion.

[4] The Debtors have filed a motion requesting permission to extend the deadline to file their schedules and statements of financial affairs through May 14, 2025 [D.I. 94].

6. The Debtors filed the 9019 Motion on April 1, 2025, only two days after the Petition Date. Objections to the 9019 Motion have been filed by Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC (the "Svonavec Parties") [D.I. 100]; Robindale Coal Sales, LLC and Robindale Export, LLC (the "Robindale Parties") [D.I. 68]; and the United States Trustee [D.I. 83].

7. As stated above, the 9019 Motion seeks the approval of a settlement (the "Settlement Agreement") between the Debtors and Bedrock that "revests title" in the Foreclosed Equipment with Debtor HCNR and its bankruptcy estate. However, the proposed Settlement Agreement also provides the following broad releases to Bedrock (collectively, the "Bedrock Releases"):

- All of the Debtors' and their bankruptcy estates' claims and causes of action, whether direct or derivative, whether for fraudulent conveyance or for similar claims, whether arising under the Bankruptcy Code or state law, or arising under the applicable provisions of the Uniform Commercial Code, that is or could be asserted with respect to the Foreclosed Equipment and Strict Foreclosure or the process related thereto or claims or causes of action that have been or could be asserted in any pending litigation is settled, compromised, and resolved.

- Without limiting any other order or agreement, and without the need for the execution and delivery of additional documentation, the Debtors and their bankruptcy estates (and any predecessor, successor or assign), shall be deemed to have waived, released and discharged any and all claims, whether directly or derivatively, known or unknown, or at law, equity or under the Bankruptcy Code (including, but not limited to, provisions of the applicable Uniform Commercial Code) against Bedrock and its affiliates, successors, assigns, members, employees, officers, agents and advisors solely with respect to or relating to or connection with the Foreclosed Equipment, Forbearance Agreement or the Strict Foreclosure (or the related process) and dealings and transactions between the Debtors and Bedrock with respect to the foregoing.

- Except with respect to a breach of the Settlement Agreement, the Debtors and their bankruptcy estates (and any party acting directly or derivatively through the Debtors) shall be deemed to have released and discharged Bedrock, together with its officers, directors, members, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action, demands, rights, or liabilities of every kind, character or nature

whatsoever, in law or in equity or under the Bankruptcy Code, known or unknown, whether asserted or unasserted, arising out of, based upon or related to, in whole or in part, the Strict Foreclosure (or the process thereof), Forbearance Agreement, the Settlement Agreement, or any of Bedrock's prepetition relationships and dealings with the Debtors or any affiliate of the Debtors as it relates to, concerns, or arises out of the Foreclosed Equipment and Strict Foreclosure (and the process thereof), including, without limitation, any claims or defenses as to the claims of Bedrock and the validity, priority, or enforceability and avoidability, reclassification or subordination of Bedrock's prepetition security interests, the obligations owed to Bedrock, or any claims or defenses under Chapter 5 of the Bankruptcy Code or any other causes of action.

8. Further, the Settlement Agreement contains the following stipulation with regard to Bedrock's liens and claims (the "Bedrock Lien and Claim Stipulation"):

- Bedrock's security interests in the Foreclosed Equipment and the proceeds thereof are valid, perfected, enforceable, and non-avoidable, and not subject to vacatur, defenses, reclassification, subordination, reconsideration, or other objection or challenge, and only subject to security interests of the allowed claims, if any, of Cleveland Bros., Caterpillar, Wells Fargo Bank, N.A., and GM Finance, which are senior in priority to Bedrock. To the extent Heritage Holding or its principals, Angela Svonavec and Jason Svonavec (together, the "Svonavecs"), have an allowed claim against HCNR, and if it is determined that Heritage Holding or the Svonavecs have valid, perfected and enforceable security interests in the Foreclosed Equipment securing such allowed claim that is not avoided, subordinated, disallowed, or reclassified, (i) such security interests are junior in priority to the senior security interests of Cleveland Bros., Caterpillar, Wells Fargo Bank, N.A., and GM Finance in certain of the Foreclosed Equipment, (ii) such security interests are junior in priority to Bedrock's security interests in all of the Foreclosed Equipment, and (iii) such security interests shall attach to the proceeds of the Foreclosed Equipment; provided however, that nothing in this settlement shall alter or affect the relief granted in the Cash Collateral Order and rights and claims of Debtors and their bankruptcy estates and Bedrock against Heritage Holding and the Svonavecs are reserved.

9. The Committee was appointed on April 15, 2025 [D.I. 95], and on April 15, 2025, selected its proposed counsel, Frost Brown Todd LLP and Landis Rath & Cobb LLP.

**PRELIMINARY OBJECTION**

A. *MARTIN* FACTORS REQUIRE DENIAL OF THE 9019 MOTION

10. The standards by which bankruptcy courts evaluate a proposed compromise and settlement are well established. Courts consider the following "*Martin*" factors when determining whether to approve a settlement under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); *cited by In re Boy Scouts of Am. & Delaware BSA, LLC*, 650 B.R. 87, 147 (D. Del. 2023). These factors seek to balance the probable benefit and potential cost of pursuing a claim or defense against the costs of the proposed settlement.

11. In the 9019 Motion, the Debtors hardly address the *Martin* factors. There is no discussion of the probability of success if the estates were to litigate against Bedrock regarding the concerns that have been raised about Bedrock's secured status and the Strict Foreclosure; any difficulties the Debtors would have in collecting against Bedrock in the event that such litigation was successful, or the complexity of the litigation involved; and the expense, inconvenience and delay necessarily attending it (aside from a conclusory statement that it "would be costly"). And there is certainly no analysis in the 9019 Motion about the paramount interest of the Debtors' creditors, other than one creditor—Bedrock.

12. Instead, the Debtors focus on the portion of the settlement that results in the "return" of the Foreclosed Equipment to the Debtors so that it can be sold. The Committee agrees that it is critical for the Foreclosed Equipment to be marketed and sold by the Debtors' estates, but the Debtors have provided no justification for the price they propose to pay (the

Bedrock Releases and the Bedrock Lien and Claim Stipulation) to obtain Bedrock's consent to such a process. In other words, while the 9019 Motion is postured as returning the parties to where they were prior to the Strict Foreclosure, it actually does anything but. Prior to the Strict Foreclosure, creditors of the Debtors would have had the right to investigate and prosecute claims against the Debtors and Bedrock for their myriad and opaque insider transactions in the year preceding these chapter 11 cases, providing the opportunity to reclaim value from Bedrock that it may have improperly extracted from the Debtors. Of course, the Committee can only allege *may have* at this time, which is the entire point – there are issues that need to be investigated.

13. It is clear what Bedrock receives out of the contemplated settlement: the Bedrock Releases and the Bedrock Lien and Claim Stipulation. What is less clear is how the Debtors and the non-insider creditors benefit. Accordingly, the Committee needs the opportunity to investigate and potentially conduct discovery regarding the transactions that are the subject of the proposed settlement. Among other things, the Committee should be entitled to fully review the transactions to understand the economic impact to the Debtors' estates of "restoring" Bedrock to its pre-foreclosure position. Without that information, it is impossible to analyze what, if anything, the Debtors compromised in the proposed Settlement Agreement. For instance, the Committee has not had an opportunity to conduct even the most basic investigation regarding what claims and/or interests Bedrock asserted with respect to the Debtors and their assets pre-foreclosure, and what claims and interests it asserts now. It appears, however, that one result of the Settlement Agreement will be to increase the Debtors' secured debt obligations by at least $10,000,000.

14. Further, with the extremely limited amount of time that the Committee has had to evaluate the potential claims that are released through the Bedrock Releases and the liens and claims covered by the Bedrock Lien and Claim Stipulation, the Committee simply cannot support the 9019 Motion at this time. The Committee needs time to explore the transactions and asserted interests at issue, and the Cash Collateral Motion contemplates that the Committee will have such an opportunity. However, approval of the 9019 Motion would cut the Committee's investigation off at the knees and render the "challenge period" granted in the Cash Collateral Motion entirely moot.

**B.    THE 9019 MOTION CANNOT WITHSTAND THE HEIGHTENED SCRUTINY REQUIRED DUE TO BEDROCK'S INSIDER STATUS**

15. When a settlement is between the debtor and an insider, bankruptcy courts apply closer scrutiny to the contemplated transactions. *In re Drexel Burnham Lambert Group, Inc.* 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) (holding that "closer scrutiny of insider agreements should be added to the cook book list of factors that Courts use to determine whether a settlement is fair and reasonable"); *Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims* (*In re Papercraft Corp.*), 211 B.R. 813, 823 (W.D. Pa. 1997) (citing *Pepper v. Litton*, 308 U.S. 295, 306 (1939)) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider . . . to show the inherent fairness from the viewpoint of the corporation and those with interests therein."). *In re Alma Energy, LLC*, 2010 WL 4736905 *5 (E.D. Ky. Nov. 16, 2010); *In re HyLoft, Inc.*, 451 B.R. 104, 113 –14 (Bankr. D. Nev. 2011) ("The bankruptcy court must subject the dealings between an insider and a debtor to closer scrutiny.").

16. There is no question that Bedrock is an insider of the Debtors as defined in Bankruptcy Code section 101(31)(B). As stated in the Declaration of Brian Ryniker (the

"Ryniker Declaration") in support of, among other things, the 9019 Motion, "[o]ne of Bedrock's principals is the father and father-in-law of certain members and/or managers of KTRV." Ryniker Declaration, at n. 3. As the US Trustee's Objection notes, that principal is Alan Kestenbaum, the founder and personal funder of Bedrock. The US Trustee's Objection details the connections between Bedrock and the Debtors in some detail; suffice it to say that the entities are inextricably intertwined.

17. As a result, this Court should subject the 9019 Motion and, in particular, the Bedrock Releases to heightened scrutiny. Given the speed with which the Debtors and Bedrock wish to have the Court approve the proposed transactions, the insider nature of the Settlement Agreement is an additional basis to "call time out" and permit the Committee to conduct its investigation before consideration of any settlement that benefits Bedrock in any way.

**C.    WITHOUT A SHOWING THAT THE CLAIMS BEING RELEASED HAVE BEEN FULLY INVESTIGATED, THE 9019 MOTION IS, AT BEST, PREMATURE**

18. Lastly, the form with which the Debtors seek to affect the proposed transactions is highly suspect. The Bedrock Releases should be proposed—if at all—through a chapter 11 plan, not through a hastily thrown-together motion that the Debtors seek to have heard without having done any investigation, and without affording the Committee the opportunity to do its own investigation. The Debtors will likely contend that the 9019 Motion does not constitute an impermissible *sub rosa* chapter 11 plan because it does not (i) dispose of all claims against the estates or (ii) restrict creditors' rights to vote. *See In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 509 (Bankr. D. Del. 2010). However, the fact that the Debtors seek the approval of the Bedrock Releases outside of a chapter 11 plan should add yet another layer of scrutiny to the proposed relief. In a chapter 11 plan context, the Debtors would have to show that it is fair and reasonable

to grant the Bedrock Releases and present evidence that the potential claims being released against Bedrock were "fully and independently investigated" and that the releases "would not extinguish any viable claims." *See In re Mallinckrodt PLC*, 639 B.R. 837, 865 (Bankr. D. Del. 2022). The Debtors cannot possibly assert that a full and independent investigation of the claims they seek to release against Bedrock has been conducted, because such an investigation has not begun, much less been completed. The broad releases that Bedrock seeks here should not even be considered—much less granted—without the protections afforded creditors through a chapter 11 plan process. Specifically, at the very least, before the Bedrock Releases can be approved, the Committee should be afforded the opportunity to conduct a thorough investigation of the claims sought to be released.

19. Judge Craig T. Goldblatt recently had the opportunity to consider whether to approve a similar motion pursuant to Bankruptcy Rule 9019 in the *In re AIO US, Inc. et al.* case, No. 24-11836 (CTG) (Bankr. D. Del. September 26, 2024) (the "AIO Case"). In the AIO Case, the Debtors sought the court's approval of a settlement that would resolve legacy talc liabilities with their non-debtor parent. In that case, the unsecured creditors' committee had been in place for a month at the time Judge Goldblatt first considered the motion. Even in that case, however, considering the releases that the parent company was requesting, Judge Goldblatt determined that "the committee is entitled to a bit more time with respect to conducting an investigation." *See* Hr'g Tr. At D.I. 237 of AIO Case, at 235:12-16, attached hereto as **Exhibit "A."** Ultimately, Judge Goldblatt did not rule on the motion until December 5, 2024, over three and a half months after the motion was filed. Here, the Committee has had zero time to conduct an investigation; before any determination is made with respect to whether Bedrock is entitled to the Bedrock Releases and the Bedrock Lien and Claim Stipulation, the Committee is entitled to

{1497.001-W0081209.}

conduct a thorough investigation, as Judge Goldblatt ruled the committee was entitled to in the AIO Case.

D. **THERE ARE SIGNIFICANT ISSUES REQUIRING INVESTIGATION**

20. The Committee has had limited opportunity thus far to investigate the transactions between the Debtors and Bedrock over the year prior to the filing of the chapter 11 cases, therefore, this list of issues is basic and inexhaustive. The Debtors and Bedrock have cooperated with the Committee in providing some documents, but many more have been requested, and the Committee will almost certainly need to take depositions once those documents have been reviewed. Here are a selection of the issues the Committee will investigate:

- On January 20, 2025, Bedrock issued a demand letter to the Debtors for defaults under a loan agreement and accompanying notes for failing to pay outstanding and accrued interest of $150,000. On January 31, 2025, pursuant to the Forbearance Agreement, the Debtors paid Bedrock a forbearance fee of $500,000 as partial consideration for Bedrock forbearing on its rights for only ten days, through February 10, 2025. This raises the question of whether in light of the relatively modest default and the brief forbearance period, the Debtors received sufficient consideration for their $500,000 forbearance payment, and why that payment did not simply cure the Debtors' payment default. Unsurprisingly, the Forbearance Agreement also included broad releases for Bedrock for all potential claims preceding that agreement.

- As additional consideration for the Forbearance Agreement, Bedrock required KTRV to grant Bedrock a lien on all of its assets, whether related to what became the Foreclosed Equipment or not, including general intangibles, claims and causes of action against the Svonavec Parties, tax refunds, rights to intercompany obligations between the Debtors, and all proceeds of these various collateral. This gives the appearance that two insider parties (the Debtors) manufactured a "default" to a third insider (Bedrock) so that the third insider would have the appearance of a legal basis to extract all value from the first two.

- The Committee must also investigate the Strict Foreclosure itself. While the Debtors and Bedrock are offering to unwind that transaction, it is for the significant price of broad and total releases for Bedrock. If that transaction is otherwise avoidable in a relatively straightforward way, then the concessions to Bedrock requested in the 9019 Motion are much too expensive for the Debtors' estates, the release of what could be extremely valuable claims.

- It appears that the Debtors' debt-service to Bedrock prior to the Strict Foreclosure was less expensive to the Debtors (and now to the estates) than the current lease-back arrangement, raising the question of what exactly the Debtors received in exchange for consensually turning the Foreclosed Equipment over to Bedrock.

21. The above issues raise the question of whether it is equitable for Bedrock to be taking the lion's share of value from these estates given its insider relationship with the Debtors and the problems with these prepetition transactions. This brief list of issues requiring investigation does not include additional potential issues the Committee may discovery concerning Bedrock's initial insider bridge loan to KTRV to purchase the assets of HCNR from the Svonavec Parties in early 2024, or Bedrock's refinancing of that bridge loan into permanent financing in mid-2024, including whether those transactions are subject to recharacterization. The Committee needs sufficient time and a sufficient budget to do these investigations.

### JOINDER & RESERVATION OF RIGHTS

22. The Committee joins in the arguments raised by the Svonavec Parties, the Robindale Parties, and the United States Trustee to the extent not inconsistent with this Preliminary Objection. The Committee further expressly reserves the right to amend and/or supplement this Preliminary Objection at any time prior to the hearing on the 9019 Motion and raise any objections to entry of any order on such motion, including at any hearing.

### CONCLUSION

23. The 9019 Motion is at best premature, and at worst, a misguided tool that will benefit only one insider creditor, Bedrock. The Committee is working diligently to explore all of the options available to these estates that will maximize value. While a resolution with Bedrock may be one of those options, it would be inappropriate at this very early stage of these cases to enter into a transaction that severely limits the Committee's ability to explore all available options. If the 9019 Motion is granted, Bedrock will receive releases and stipulations of

unknown value that will hinder the Committee from doing its job: conducting a full investigation into the prepetition activities of the Debtors and their insiders. A quick resolution would be particularly imprudent in light of the serious allegations against Bedrock as an insider, including Bedrock's role in the events that led to the Debtors' bankruptcy filing. For all of those reasons, the Committee requests that the Court deny the 9019 Motion.

**WHEREFORE**, the Committee respectfully requests that this Court: (a) sustain this Objection; (b) deny the 9019 Motion; and (c) grant the Committee such other and further relief as this Court deems just and appropriate under the circumstances.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: April 29, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Kimberly A. Brown*
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
Elizabeth A. Rogers (No. 7335)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  brown@lrclaw.com
       pierce@lrclaw.com
       erogers@lrclaw.com

-and-

**FROST BROWN TODD LLP**

Jordan S. Blask, Esq. (admitted *pro hac vice*)
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, PA 15219
Telephone: (412) 513-4300
Facsimile:  (412) 513-4299
Email:  jblask@fbtlaw.com

-and-

Ronald E. Gold, Esq. (admitted *pro hac vice*)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Telephone: (513) 651-6800
Facsimile:  (513) 651-6981
Email:  rgold@fbtlaw.com

-and-

Bryan J. K. Sisto, Esq. (admitted *pro hac vice*)
400 West Market Street, Suite 3200
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile:  (502) 589-1087
Email:  bsisto@fbtlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*