**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KTRV LLC, *et al.*,[1]<br>     Debtors. | Chapter 11<br><br>Case No. 25-10601 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: May 5, 2025 at 11:30 a.m. (ET)<br>Obj. Deadline: April 29, 2025 at 4:00 p.m. (ET)<br>Re: Docket Nos. 156, 157 & 162 |

**OBJECTION OF ANGELA SVONAVEC, JASON SVONAVEC, AND HERITAGE HOLDING CO., LLC TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS AND PROVIDE BID PROTECTIONS, (III) APPROVING THE FORM AND MANNER OF SALE NOTICE, (IV) SCHEDULING AN AUCTION AND SALE HEARING, (V) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, (VI) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR, AND (VII) GRANTING RELATED RELIEF**

Angela Svonavec ("Mrs. Svonavec"), Jason Svonavec ("Mr. Svonavec," and together with Mrs. Svonavec, the "Svonavecs"), and Heritage Holding Co., LLC ("HHC," and together with the Svonavecs, the "HHC Parties") hereby object (this "Objection") to the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and Provide Bid Protections, (III) Approving the Form and Manner of Sale Notice, (IV) Scheduling an Auction and Sale Hearing, (V) Approving the Procedures for the Assumption and Assignment of Contracts, (VI) Approving the Sale of the Debtors' Assets Free and Clear, and (VII) Granting Related Relief* [D.I. 156] (the "Bid Procedure Motion")[2], filed by KTRV LLC ("KTRV") and Heritage Coal & Natural Resources, LLC

---

[1] The Debtors in these chapter 11 cases, along with each the last four digits of each Debtor's tax identification number, are as follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The Debtors' service address is 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Bid Procedures Motion.

("HCNR," and together with KTRV, the "Debtors") for an order, *inter alia* approving the Bidding Procedures in connection with the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets"). In support of this Objection, the HHC Parties state as follows:

## I. INTRODUCTION

1. The relief sought in the Bid Procedures Motion further advances the Debtors' efforts to provide all available value to Bedrock Industries Investco 1 LLC ("Bedrock") at the expense of the estates, as detailed in the *Motion of Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC to Compel Full Access to Data Room and Debtor Information with Sale* (the "Motion to Compel"), the HHC Parties are punitively being excluded from an opportunity to participate in the Debtors' proposed "fair and open" sale process.[3]

2. Specifically, the Bid Procedures Motion (i) works in tandem with the Settlement Motion and assumes as a *fait accompli* this Court's approval of the Settlement Motion by providing insider Bedrock credit bidding rights based on its alleged lien, despite Bedrock's claims and alleged liens being subject to potential recharacterization, disallowance, or avoidance; (ii) provides for Bedrock to continue to exert improper influence and control over the Debtors throughout the proposed Sale process, (iii) does not provide adequate time for the marketing and sale of the Debtors' assets; (iv) imposes a needlessly short four-day period to review any Stalking Horse

---

[3] Additional background regarding the history between the HHC Parties, the Debtors, and Bedrock is provided in the *Objection of Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC to the Motion of the Debtors and Debtors-In-Possession for Order Pursuant to 11 U.S.C. §§ 105(A) and 363 and Fed. R. Bankr. P. 9019(B) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC With Respect to the Strict Foreclosure and Foreclosed Equipment* [D.I. 86, 100] (the "Settlement Motion Objection") filed in response to the *Motion of the Debtors and Debtors-in-Possession for Order Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 9019(b) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC with Respect to the Strict Foreclosure and Foreclosed Equipment* [D.I. 26] (the "Settlement Motion") and *Objection of Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors and Debtors In Possession to (A) Use Cash Collateral and (B) Grant Adequate Protection to the Prepetition Lender; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [D.I. 87, 101] (the "Cash Collateral Objection"). The factual background and the arguments raised in the Settlement Motion Objection, the Cash Collateral Objection, and the Motion to Compel are adopted as if set forth herein.

2

Notice and a *Saturday* objection deadline; and (v) does not comply with Local Rule of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 6004-1(c)(ii)(C) as the proposed Bid Procedures do not permit all creditors to attend the Auction.

3. Furthermore, as discussed in the Motion to Compel, the Debtors have already taken actions to exclude the HHC Parties from participation as a bidder in the Sale process. Given their treatment by the Debtors thus far, the HHC Parties are concerned that the Debtors do not intend to conduct a fair and open sale process that will maximize value for the estates. Based on the arbitrary and onerous restrictions that the Debtors have already sought to impose on the HHC Parties simply to gain access to the data room to conduct to due diligence, the HHC Parties also object to the provision in the Bid Procedures Order that would permit the Debtors to impose additional procedural rules or restrictions that may further be misused by the Debtors to penalize the HHC Parties.

## II.    ARGUMENT

4. The HHC Parties do not object to a fair and open sale process that provides the Debtors an opportunity to maximize the value of their assets, but that process must actually be fair and open.

**A.    Bedrock Should Not Be Permitted to Credit Bid**

5. In conjunction with the other relief sought by the Debtors in these Chapter 11 Cases, the Bid Procedures Motion seeks to secure and protect the rights of Bedrock, the Debtors' favored insider creditor both pre and postpetition. Specifically, in the Bid Procedures Motion the Debtors assert that Bedrock's claim is at least $6 million and that Bedrock holds a perfected security interest in substantially all of the Debtors' assets, including its equipment. Consistent with the relief sought in the Settlement Motion, the Bid Procedures Motion seeks to "expressly reserve[] and preserve[]"

Bedrock's alleged credit bid rights. However, in these cases, especially given the undisclosed insider relationship between the Debtors and Bedrock and the potential claims that the estate may have to recharacterize Bedrock's claims or avoid Bedrock's alleged lien, Bedrock should not be allowed to credit bid at the Auction.

6. Section 363(k)[4] provides—

> (k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363. The purpose of permitting a secured creditor to make a credit bid under § 363(k) is to protect a secured creditor's interest in the value of the property being sold. However, according to the plain meaning of the text of § 363(k), a party that does not have an "allowed" claim is not eligible to credit bid the value of that claim at a sale outside the ordinary course of business under § 363(b). As described more fully in the Settlement Motion Objection, the insider Bedrock's alleged secured claim is vulnerable and could be subject to avoidance.

7. Moreover, sufficient cause exists in these cases to prohibit Bedrock as a purported secured creditors from credit bidding under 363(k). "Cause" is not defined in Section 363, but it is intended to be a flexible concept enabling a court to fashion an appropriate remedy on a case-by-case basis. *In re DeCurtis Holdings LLC*, Case No. 23-10548 (JKS), 2023 Bankr. LEXIS 2006, *28 (Bankr. D. Del. Aug. 14, 2023); *In re Aéropostale, Inc.*, 555 B.R. 369, 415 (Bankr. S.D.N.Y. 2016) (citing *In re River Road Hotel Partners, LLC*, Case No. 09 B 30029, 2010 Bankr. LEXIS 5933, at *1 (Bankr. N.D. Ill. Oct. 5, 2010) ("Section 363 gives courts the discretion to decide what

---

[4] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

4

constitutes 'cause' and the flexibility to fashion an appropriate remedy by conditioning credit bidding on a case-by-case basis.").

8. "'Cause' has been found in 'situations in which a secured creditor has engaged in inequitable conduct,' or where 'a sufficient dispute exists regarding the validity of the lien forming the basis for the credit bid.'" *In re DeCurtis Holdings LLC*, 2023 Bankr. LEXIS 2006 at *28 (citations omitted); *see also, In re Weiss Multi-Strategy Advisers LLC*, 665 B.R. 578, 593 (Bankr. S.D.N.Y. 2024) ("In general, '[c]ourts have . . . limited the right to credit bid when the validity of a creditor's lien is in dispute.'") (citations omitted); *In re Fisker Automotive Holdings., Inc.*, 510 B.R. 55 (Bankr. D. Del. 2014) (limiting secured creditor's right to credit bid where "to do otherwise would freeze bidding" and citing "a variety of cases" where courts have denied secured lenders the right to credit bid); *In re Free Lance-Star Publishing Co.*, 512 B.R. 798 (Bankr. E.D. Va. 2014) (restricting secured creditor's right to credit bid where the creditor lacked a lien on certain of the debtors' assets, the creditor had engaged in inequitable conduct, and "limiting the amount of the credit bid in this case will restore enthusiasm for the sale and foster a robust bidding process"); *see also In re McMullan*, 196 B.R. 818, 835 (Bankr. W.D. Ark, 1996) (holder of a secured claim "shall not be entitled to offset bid any of its claims liens or security interest under 11 U.S.C. § 363(k) because the validity of its liens and security interests are unresolved"); *In re Octagon Roofing*, 123 B.R. at 592 (Bankr. N.D. Ill. 1991) (requiring holder of alleged secured claim to deliver irrevocable letter of credit prior before allowing a credit bid).

9. In these cases, "cause" exists to preclude credit bidding by Bedrock because its liens are subject to bona fide dispute, which the Debtors have not adequately described or examined to date due to the insider nature of the relationship between the Debtors and Bedrock. Furthermore, as described in the Settlement Motion Objection, Bedrock's actions in advance of

the bankruptcy were inequitable and designed to extract all value from the Debtors for the benefit of Bedrock and members of the Kestenbaum family. Bedrocks' liens could be avoided, subordinated and/or recharacterized for the benefit of the estate. To permit Bedrock to credit bid its claims in a sale of the Assets would frustrate the purpose of § 363(k) in contravention of case law and would be detrimental to these bankruptcy estates.

10. At the very least, these issues should not be decided on shortened notice in connection with bid procedures and the issues with respect to Bedrock's credit bid rights should be left open for later determination by this Court.

**B.    The Bid Procedures Do Not Provide the Debtors with Adequate Time to Market the Assets**

11. The HHC Parties understand the Debtors' objective to expeditiously consummate a sale; however, the desire for a swift sale must be weighed against the additional value that the estate may realize from a more robust and longer marketing process.

12. The Bid Procedures seek to have a Sale close only 81 days after the Petition Date, and 45 days after approval of the Bid Procedures Order.

13. As referenced in the Motion to Compel, the HHC Parties have requested access to the data room, but the Debtors have refused to provide the HHC Parties with such access and sought to impose punitive conditions on the HHC Parties' access. The Debtors' improper actions have delayed the HHC Parties ability to conduct necessary and customary diligence.

14. To maximize value for estate, the Debtors should extend the Bid Deadline, the Auction Date, the Sale Hearing, and the Closing Date by at least 30 days to provide interested parties sufficient time to diligence the assets and the Debtors with sufficient time to market the Assets.

**C.      The Stalking Horse Objection Deadline Does Not Provide Parties Sufficient Time**

15.     In order to provide sufficient time to respond to any Stalking Horse Bidder Designation, the Court should modify the proposed schedule. The Debtors propose to designate one or more Qualified Bidders as Stalking Horse Bidders by Monday, May 19, 2025, but the deadline for parties to object to the Stalking Horse Bidder Designation is inexplicably only four business days after the notice would be filed and would be set on *Saturday*, May 24, 2025.

16.     Fundamental due process requires that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *See also Sullivan v. Barnett*, 139 F.3d 158, 171 (3d Cir. 1998) (due process requires notice and a meaningful opportunity to be heard). These due process considerations apply to bankruptcy proceedings. *See, e.g.*, *Matter of Boomgarden*, 780 F.2d 657, 660-661 (7th Cir. 1985). A fair and open sale process must provide the HHC Parties and other interested parties with a meaningful opportunity to review information and sufficient time to file a substantive objection. As proposed, the Bidding Procedures do not provide that opportunity.

17.     The Debtors should be required to actually file and serve the Stalking Horse Notice on notice parties by May 19, 2025. The Bid Procedures as drafted do not clearly provide that the Stalking Horse Notice will be filed by that date, instead the Bid Procedures only provide that the Stalking Horse Designation will occur by May 19, 2025.

18.     Furthermore, the Stalking Horse Objection Deadline proposed by the Debtors is unduly burdensome on parties responding to the Stalking Horse Notice. The Bid Procedures would establish a needlessly short response period—especially if the Stalking Horse Notice was filed late on May 19, 2025—and the Stalking Horse Objection Deadline would fall on a weekend. The

7

Stalking Horse Objection Deadline should be modified to provide parties with at least seven business days' notice and time to respond, and set an objection deadline that falls on a weekday.

**D.     HHC Parties Should be Permitted to Attend the Auction**

19.    The Bid Procedures seek to limit attendance at the Auction to only representatives of the Debtors, the United States Trustee, the Committee, any Qualified Bidder, and any other parties that the Debtors deem appropriate. In accordance with Del. Bankr. L.R. 6004-1(c)(ii)(C), this provision should be modified to permit all creditors, including the HHC Parties, to attend the Auction.

**E.     The Debtors' Ability to Impose Procedural Rules that Could Limit HHC Parties' Ability to Participate in the Sale Process Should be Limited**

20.    The HHC Parties understand that there is an inherent need in bid procedures to provide the Debtors the ability to run a fair and open sale process, and that such a process may require procedural modifications in real time. However, specifically in these cases due to the restrictions that the Debtors have already sought to improperly impose solely on the HHC Parties to limit their ability to participate in the Sale process, the HHC Parties object to the provision in the Bid Procedures Order that would permit the Debtors to impose additional procedural restrictions or Auction Rules with respect to the conduct of the Auction that may further be used punitively against the HHC Parties.

### III.    RESERVATION OF RIGHTS

21.    The HHC Parties reserve the right to make such other and further objections as may be appropriate to the Sale and do no waive and hereby preserve all of their rights, remedies and arguments with respect to such Sale.

**WHEREFORE**, Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC respectfully request that the Court grant relief consistent with the foregoing objections, and such

other and further relief as may be just and proper under all of the circumstances.

| | |
|---|---|
| Dated:  April 29, 2025<br>Wilmington, Delaware | */s/ Matthew G. Summers*<br>Matthew G. Summers (No. 5533)<br>Margaret A. Vesper (No. 6995)<br>Erin L. Williamson (No. 7286)<br>BALLARD SPAHR LLP<br>919 N. Market Street, 11th Floor<br>Wilmington, Delaware 19801-3034<br>Telephone: (302) 252-4428<br>Facsimile: (302) 252-4466<br>Email: summersm@ballardspahr.com<br>            vesperm@ballardspahr.com<br>            williamsone@ballardspahr.com<br><br>-and-<br><br>Mark G. Claypool<br>Bryan G. Baumann<br>KNOX MCLAUGHLIN GORNALL & SENNETT, P.C.<br>120 West Tenth Street<br>Erie, PA 16501<br>Telephone:  (814) 459-2800<br>Facsimile: (814) 453-4530<br>Email: mclaypool@kmgslaw.com<br>            bbaumann@kmgslaw.com<br><br>*Counsel for Angela Svonavec, Jason Svonavec, and Heritage Holding Co., LLC* |