**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KTRV LLC, *et al.*,[1] | Case No. 25-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: May 5, 2025 at 11:30 a.m. (ET)<br>Objection Deadline: April 29, 2025 at 4:00 p.m. (ET) |
| | Ref. No. 156 |

**PRELIMINARY OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS AND PROVIDE BID PROTECTIONS, (III) APPROVING THE FORM AND MANNER OF SALE NOTICE, (IV) SCHEDULING AN AUCTION AND SALE HEARING, (V) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS, (VI) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR, AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of KTRV LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by its undersigned proposed counsel, Frost Brown Todd LLP and Landis Rath & Cobb LLP, files this preliminary objection (the "Preliminary Objection") to the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and Provide Bid Protections, (III) Approving the Form and Manner of Sale Notice, (IV) Scheduling an Auction and Sale Hearing, (V) Approving the Procedures for*

---

[1] The Debtors in these chapter 11 cases, along with each the last four digits of each Debtors' tax identification number, are as follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The location of the Debtors' principal place of business and service address is 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

*the Assumption and Assignment of Contracts, (VI) Approving the Sale of the Debtors' Assets Free and Clear, and (VII) Granting Related Relief* [D.I. 156] (the "Bid Procedures Motion").[2]

## PRELIMINARY STATEMENT

1. Prior to even filing schedules and statements of financial affairs, the Debtors seek the expedited approval (with objections to be filed on four (4) business days' notice) of accelerated bidding and sale procedures ("Sale Procedures"). These actions appear to be calculated, at least in part, to ensure that Bedrock Industries Investco I LLC ("Bedrock"), an insider and the prepetition lender of the Debtors, is absolved of any wrongdoing and is provided the unfettered right to credit bid without affording the Committee any meaningful opportunity to investigate its conduct and the validity and enforceability of its purported prepetition secured debt and liens. The Debtors provide no compelling justification for the truncated timeline they request, and the proposed Sale Procedures are deeply flawed.

2. Among other issues, the Debtors' proposed form of order approving the Bid Procedures Motion inappropriately includes a judicial finding that Bedrock's claim is allowed in an amount certain with a perfected security interest in substantially all of the Debtors' assets. It also provides Bedrock with an unconditional right to credit bid without appropriate safeguards to protect creditors. Further, any Sale Procedures ultimately approved by this Court must provide for adequate consultation with the Committee before any decisions about the sale of assets are made. Finally, as written, the proposed Sale Procedures intimate that any bid for the Debtors' equipment must contain an "allocation"; however, the Sale Procedures must be revised to disclose the fact that such an allocation is required because the Debtors may withdraw certain

---

[2] Unless otherwise indicated, all capitalized terms herein shall have the meanings ascribed to them in the Bid Procedures Motion.

{1497.001-W0081244.}

equipment from the sale. Under these circumstances, the Court should not approve the Bid Procedures Motion in its current form.

## BACKGROUND

3. On March 30, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court"). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have not yet filed their schedules or statements of financial affairs.[3]

4. Also on the Petition Date, the Debtors filed the *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors and Debtors-in-Possession to (A) Use Cash Collateral and (B) Grant Adequate Protection to the Prepetition Lender; (II) Modifying the Automatic Stay; and (III) Granting Related Relief* [D.I. 14] (the "Cash Collateral Motion").

5. On April 1, 2025, the Debtors filed the *Motion of the Debtors and Debtors-In-Possession for Order Pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P. 9019(b) Authorizing and Approving a Global Settlement with Bedrock Industries Investco 1 LLC with Respect to the Strict Foreclosure and Foreclosed Equipment* [D.I. 26] (the "9019 Motion").

6. Contemporaneously herewith, the Committee is filing objections to the Cash Collateral Motion and the 9019 Motion. Rather than repeat the Factual Background sections contained in those objections, the Committee incorporates those sections by reference herein.

7. On April 25, 2025, the Debtors filed the *Debtors' Application for (I) the Retention and Employment of Ritchie Bros. Auctioneers, Inc. as Auctioneer, Nunc Pro Tunc to April 24,*

---

[3] The Debtors have filed a motion requesting permission to extend the deadline to file their schedules and statements of financial affairs through May 14, 2025 [D.I. 94].

{1497.001-W0081244.}
-3-

*2025, (II) Authorizing the Sale of Equipment [Free] and Clear of All Liens, Claims and Encumbrances; and (III) Granting Related Relief* [D.I. 165] (the "<u>Ritchie Bros. Application</u>").

8. The Ritchie Bros. Application contains the following language (the "<u>Withdrawal Protocol</u>"):

> The Debtors reserve the right to remove Equipment from the Equipment list outlined in Schedule A to the Auction Agreement through and including June 6, 2025 (the "Withdraw Deadline") in order to pursue sale of same as part of a going concern sale (the "Mining Asset Sale") sought pursuant to the Sale Motion. RBA will be compensated for any Equipment removed from the Equipment list prior to and through the Withdraw Deadline at a rate of three percent (3%) the "auction low" value assigned to the relevant piece(s) of Equipment in Schedule A to the Auction Agreement, up to an aggregate maximum of $550,000, plus the Auctioneer's out of pocket costs incurred with request to such withdrawn Equipment, and RBA shall be paid the related fees and expenses from the proceeds of the Mining Asset Sale. RBA and the Debtors agree that no Equipment will be removed after the Withdraw Deadline.

Ritchie Bros. Application at p. 6.

9. The Bid Procedures Motion makes reference to the fact that "[e]ach Bid must specifically identify all equipment to be purchased, and an allocation of the purchase price for each piece of equipment." Bid Procedures Motion at p. 8. However, nowhere in the Bid Procedures Motion is there any mention of the Withdrawal Protocol, or any other explanation for the requirement that bidders allocate their purchase price on each piece of equipment.

10. The Bid Procedures Motion further states that Bedrock "is a creditor with a claim in excess of $6 million, with a perfected security interest in substantially all of the Debtors' assets, including its equipment. The proposed Sale Procedures limit consideration of Bids to all cash Bids, other than the right of [Bedrock] to credit bid under 11 U.S.C. § 363(k), which is

expressly reserved and preserved."[4]  Bid Procedures Motion, p. 29 (the "Bedrock Credit Bid Stipulation").

11. The Committee was appointed on April 15, 2025 [D.I. 95], and on April 15, 2025, selected its proposed counsel, Frost Brown Todd LLP and Landis Rath & Cobb LLP.

### PRELIMINARY OBJECTION

12. "Bidding procedures should [only] be approved when they provide a benefit to the estate by maximizing the value of the assets." *In re Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *253 (Bankr. Del. Aug. 15, 2007) (internal citations omitted). Accordingly, the Debtors bear the burden to justify any sale of assets. *See In re Decora Indus., Inc.*, Case No. 00-4459 (JJF), 2002 U.S. Dist. LEXIS 27031, at *7 (D. Del. May 20, 2002) ("Generally, a debtor may sell assets outside the ordinary course of business when it has demonstrated that the sale of such assets represents the sound exercise of business judgment."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

13. When a section 363 sale benefits an insider (as may be the case here), the Court does not defer to a debtor's business judgment.[5]  Instead, "insider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation

---

[4] The Bid Procedures Motion further states that the amount of Bedrock's claim depends on whether this Court grants the 9019 Motion. If this Court grants the 9019 Motion, "certain equipment that was foreclosed upon prior to the Petition Date will be returned to the bankruptcy estates, however, the amount of Bedrock's claim will revert to the amount it would have otherwise been had the strict foreclosure not occurred." Bid Procedures Motion at p. 29, n. 4.

[5] *See, e.g., In re AIG Fin. Prods. Corp.*, 651 B.R. 463, 476 (Bankr. D. Del. 2023) (explaining that "there is no per se prohibition on a sale of a debtor's assets to an insider, although such transactions are subject to a heightened scrutiny standard"); *Crown Vill. Farm, LLC v. Arl. L.L.C. (In re Crown Vill. Farm, LLC)*, 415 B.R. 86, 93 (Bankr. D. Del. 2009); *Official Comm. of Unsecured Creditors of Enron Corp. v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 28 (S.D.N.Y. 2005).

and those with interests therein." *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims* (*In re Papercraft Corp.*), 211 B.R. 813, 823 (W.D. Pa. 1997), aff'd, 160 F.3d 982 (3d Cir. 1998)).[6]  The Debtors fail to meet that burden here where: (i) Bedrock, an insider, stands to benefit from the sale to the exclusion of unsecured creditors and other stakeholders; (ii) the truncated timeline is unsupported; (iii) the Debtors propose to release claims and causes of action against Bedrock before they are valued and without sufficient time for investigation or discovery; and (iv) the timeline will discourage a competitive bidding process.

### A. The Court Should Not Approve the Bedrock Credit Bid Stipulation and Any Credit Bid Rights Must Be Limited

14. "The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate." *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998). To accomplish that goal, bankruptcy courts are necessarily given discretion and latitude in conducting the sale. *Id.; see also In re Wintz Co.*, 219 F. 3d 807, 812 (8th Cir. 2000) (*citing In re Food Barn Stores, Inc.*, 107 F.3d 558, 566 (8th Cir. 1997) (stating that in structuring the sale of assets, "[bankruptcy courts] have ample latitude to strike a satisfactory balance between the relevant factors of fairness, finality, integrity, and maximization of assets").

15. With those goals in mind, the Sale Procedures do not appear to satisfy the "fairness" inquiry; nor do they appear to be designed to maximize a return for the Debtors' assets. Instead, and consistent with the 9019 Motion, the central purpose of the proposed Sale Procedures here appears to be to benefit Bedrock by, among other things, providing it with

---

[6] *In re Crown Vill. Farm, LLC*, 415 B.R. at 93 (holding that "[t]he sale process will be under the close scrutiny of the Court as required where the stalking horse is an insider"); *see also In re Summit Global Logistics, Inc.*, 2008 Bankr. LEXIS 896, *27–28 (Bankr. D.N.J. Mar. 26, 2008) (quoting *In re Medical Software Solutions*, 286 B.R. 431, 445 (Bankr. D. Utah 2002) ("[W]hen a preconfirmation [section] 363(b) sale is of all, or substantially all, of the Debtor's property, and is proposed during the beginning stages of the case, the sale transaction should be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization")).

{1497.001-W0081244.}

maximum protection from any challenge to its liens and claims and the unfettered right to credit bid its alleged secured debt obligations.

16. If the Bedrock Credit Bid Stipulation in the Bid Procedures Motion is approved by this Court, it would further buttress Bedrock's position and control over these cases. Much like the Bedrock Releases and the Bedrock Lien and Claim Stipulation from the 9019 Motion, the Bedrock Credit Bid Stipulation would render any challenge period in the Cash Collateral Motion moot. Further, the Bedrock Credit Bid Stipulation will stifle any meaningful competitive bidding. For instance, as noted above, the procedures require bidders who bid on equipment to allocate their purchase price among each piece of equipment they bid on. Nothing in the procedures would prevent Bedrock from using as much of its credit bid as it needs to in order to outbid each bidder up to the amount they allocate for each piece of equipment. Such an anti-competitive process will do nothing to maximize a return to the estates, but it will certainly maximize Bedrock's control over the process.

17. Moreover, a secured lender's right to credit bid is not absolute. *See In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59 (Bankr. D. Del. 2014) (citing *In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010). Specifically, Bankruptcy Code section 363(k) provides that a party may credit bid "unless the court for cause orders otherwise…." 11 U.S.C. § 363(k). Although not defined, "for cause" is "intended to be a flexible concept enabling a court to fashion an appropriate remedy on a case-by-case basis." *In re NJ Affordable Homes Corp.*, 2006 Bankr. LEXIS 4498, at 59 (Bankr. D.N.J. June 29, 2006). Where a lender's purported secured debt and liens have not yet been proven valid, it is appropriate to condition the lender's ability to credit bid and establish safeguards to protect unsecured creditors.

18. As such, Bedrock's credit bid rights, if any, should not be unconditionally blessed without appropriate safeguards to protect creditors. In *In re Chem Rx Corp.*, 2011 WL 13506147 *3 (Bankr. Del. 2011), this Court approved bid procedures for the sale of substantially all of the debtors' assets, but the alleged secured creditor's credit bid was subject to the committee's right to object at the sale hearing; further, the order contained no finding or determination with respect to the nature, extent, validity, priority or perfection of the alleged secured creditor's interest in or liens upon the assets. Similarly, to the extent that the Court gives Bedrock any credit bid rights whatsoever, such rights should be subject to the rights of the Committee to object to such credit bid at any sale hearing, and the award of such rights should specify that nothing in the order is deemed to constitute a finding or determination with respect to the nature extent, validity, priority or perfection of the alleged secured creditor's interest in or liens upon the assets. Until either Bedrock's liens and claims are validated or successfully challenged by the Committee, any bid procedures also should require (i) Bedrock to post a letter of credit if it is the successful bidder or (ii) the escrowing of any sale proceeds from a third party.

**B.     An Expedited Schedule Is Unjustified**

19. The Debtors' proposed timeline includes the following key dates and deadlines:

| Key Date/Deadline | Date |
|---|---|
| Stalking Horse Designation Deadline | May 19, 2025 |
| Bidding Deadline | June 2, 2025 |
| Auction | June 5, 2025 |
| Successful Bidder Designation Deadline | June 5, 2025 |
| Objection Deadline | June 6, 2025 |
| Sale and Contract Assignment Objection Deadline | June 10, 2025 |
| Sale Hearing | June 12, 2025 |
| Closing Deadline | June 19, 2025 |

Nowhere in the Bid Procedures Motion do the Debtors articulate any basis for this expedited timeline. The Committee recognizes the need for this case to move efficiently, but the "need for expedition . . . is not a justification for abandoning proper standards." *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983) (quoting *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 450 (1968)). Certainly, Bedrock's interest in obtaining a release, among other value-destructive benefits, cannot justify such haste.

20. The procedures governing a sale process should be designed to foster the competitive process, and bankruptcy courts should "not allow anything to chill an active marketing and auction process." *Crown Vill. Farm, LLC v. Arl, L.L.C.* (*In re Crown Vill. Farm, LLC*), 415 B.R. 86, 93 n.4 (Bankr. D. Del. 2009). The Debtors' proposed procedures lack any apparent justification and would chill the competitive process, ultimately lowering any return to unsecured creditors and other stakeholders. *See, e.g.*, *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423 (Bankr. S.D. Tex. 2009) ("Not every sale is an emergency, and . . . the reliability of uncontested evidence (and particularly the reliability of testimony that is not adequately cross-examined), is suspect.").

    **C.**    **Any Procedures Must Disclose the Withdrawal Protocol to Potential Bidders**

21. In keeping with the notion that a 363 sale must be conducted in fairness, it is imperative that potential bidders are provided with accurate and clear information about the procedures themselves. Unfortunately, the Withdrawal Protocol is nowhere in the Bid Procedures Motion or the proposed Sale Procedures attached thereto. Without such a disclosure, potential bidders will likely be uninformed about the implications of the allocations stated in their bids. The Committee is still in the process of analyzing whether the Withdrawal Protocol

itself is an appropriate use of the Debtors' business judgment and reserves all rights with respect thereto.

### D. If Approved, the Sale Procedures Must Provide for Committee Consultation

22. To the extent that the Court approves any bid procedures, they should preserve the Committee's right to consult with the Debtors with respect to all impactful decisions related to any sale, including but not limited to:

- Selection of Stalking Horse Bidder(s)
- Determination of Qualified Bids
- Determination of Highest or Otherwise Best Bid
- Determination of Back-Up Bid.

### JOINDER & RESERVATION OF RIGHTS

23. The Committee joins in the arguments raised by any other objecting parties to the extent not inconsistent with this Preliminary Objection. The Committee further expressly reserves the right to amend and/or supplement this Preliminary Objection at any time prior to the hearing on the Bid Procedures Motion and raise any objections to entry of any order on such motion, including at any hearing.

### CONCLUSION

24. The Bedrock Credit Bid Stipulation, the Sale Procedures timeline, and the lack of information provided to potential bidders all suggest that the Bid Procedures Motion is designed to benefit one party: Bedrock. As it has done with respect to the 9019 Motion and the Cash Collateral Motion, the Committee is analyzing all of the information the Debtors have provided in as efficient a manner as possible under extremely tight time constraints. The Committee is also in regular dialogue with the Debtors, Bedrock, and other stakeholders as it continues to

explore options for maximizing value for the Debtors' estates. The sale contemplated by the Bid Procedures Motion is likely necessary; however, the Bedrock Credit Bid Stipulation is entirely unnecessary. In addition, the Committee is not yet convinced that the compressed time frame is an appropriate exercise of the Debtors' business judgment. Finally, in the event that the Court approves any bid procedures, the Committee would request that the Court require the Debtors to (a) disclose the Withdrawal Protocol in a more transparent manner, and (b) preserve the Committee's consultation rights.

**WHEREFORE**, the Committee respectfully requests that this Court: (a) sustain this Preliminary Objection; (b) deny the Bid Procedures Motion; and (c) grant the Committee such other and further relief as this Court deems just and appropriate under the circumstances.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: April 29, 2025
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ *Kimberly A. Brown*
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
Elizabeth A. Rogers (No. 7335)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: brown@lrclaw.com
      pierce@lrclaw.com
      erogers@lrclaw.com

-and-

**FROST BROWN TODD LLP**

Jordan S. Blask, Esq. (admitted *pro hac vice*)
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, PA 15219
Telephone: (412) 513-4300
Facsimile: (412) 513-4299
Email: jblask@fbtlaw.com

-and-

Ronald E. Gold, Esq. (admitted *pro hac vice*)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981
Email: rgold@fbtlaw.com

-and-

Bryan J. K. Sisto, Esq. (admitted *pro hac vice*)
400 West Market Street, Suite 3200
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile: (502) 589-1087
Email: bsisto@fbtlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*