**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| KTRV LLC, *et al.*,[1] | Case No. 25-10601 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: Oct. 15, 2025 at 10:30 a.m. (ET)** |
| | **Objection Deadline: Oct. 7, 2025 at 4:00 p.m. (ET)** |
| | **Ref. Nos. 466 & 493** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO**
**DEBTORS' COMBINED DISCLOSURE STATEMENT AND PLAN OF**
**LIQUIDATION DATED SEPTEMBER 1, 2025**

The Official Committee of Unsecured Creditors (the "Committee") of KTRV LLC

("KTRV") and its affiliated debtors and debtors in possession (together with KTRV,

the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by its

undersigned counsel, Frost Brown Todd LLP and Landis Rath & Cobb LLP, files this objection

(the "Objection") to the *Combined Disclosure Statement and Plan of Liquidation Dated*

*September 1, 2025* [D.I. 493] (the "Plan") and to the entry of a final order confirming the Plan

("Confirmation Order"). In support of the Objection, the Committee states:

## PRELIMINARY STATEMENT

The Committee submits this limited Objection to confirmation of the Plan. While the

Committee recognizes the efforts undertaken to reach a resolution in these Chapter 11 Cases, it

cannot support the Plan's proposed releases in favor of the KTRV Parties, defined below, and

other insiders. The Plan seeks to grant sweeping releases to these parties without any meaningful

---

[1]    The Debtors in these chapter 11 cases, along with each the last four digits of each Debtors' tax identification number, are as
follows: KTRV LLC (9993), Heritage Coal & Natural Resources, LLC (8326). The location of the Debtors' principal place
of business and service address is 1521 Concord Pike, Suite 201, Wilmington, DE 19803.

investigation into potential estate claims, without substantial participation or contribution by the KTRV Parties, and without the provision of adequate consideration as required by applicable law. As set forth more fully below, the Committee has not had the resources necessary to conduct a thorough investigation of potential claims against insiders, and the record does not support the extraordinary relief of non-consensual releases. The Committee respectfully submits that confirmation of the Plan should be denied to the extent it provides for such releases, or, at a minimum, that approval of those releases be deferred pending further investigation and a showing of substantial contribution and necessity as required under controlling Third Circuit and Delaware law.

## BACKGROUND

### A.    The Chapter 11 Cases

1.    On March 30, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court").

2.    On April 15, 2025, pursuant to Section 1102(a)(1), the U.S. Trustee entered its *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 95].

### B.    The Auction and Sale of Assets

3.    Pursuant to the *Order (I) Approving the Bidding Procedures, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and Provide Bid Protections, (III) Approving the Form and Manner of Sale Notice, (IV) Scheduling an Auction and Sale Hearing, (V) Approving the Procedures for the Assumption and Assignment of Contracts, (VI) Approving the Sale of the Debtors' Assets Free and Clear, and (VII) Granting Related Relief* (the "Bid Procedures Order") [D.I. 287], dated May 9, 2025, an auction with respect to

substantially all of the Debtors' assets commenced on June 10, 2025 and concluded on June 12, 2025 (the "Auction").

4.    In connection with the outcome of the Auction, on June 25, 2025, the Court entered the *Order (A) Approving the Sale of Estates' Assets to 97 Mining Equipment Company, LLC and 97 Mining Operating Company, LLC, (B)Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [D.I. 401], and the *Order Approving the Sale of the Estates' Assets to Simkol Corp. and Fearless Leasing, LLC, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [D.I. 402] (collectively, the "Sale Orders").

### C.    The 9019 Settlement

5.    Following the entry of the Sale Orders, the Court entered an *Order Approving the Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(A) and 363 and Fed. R. Bankr. P. 9019(B) for Approval of a Global Settlement Between the Debtors, the Official Committee of Unsecured Creditors and Bedrock Industries Investco 1 LLC* (the "9019 Order") [D.I. 396].

6.    The 9019 Order, among other things, granted broad releases to the Debtors' secured lender, Bedrock Industries Investco 1 LLC ("Bedrock") and various individuals associated with Bedrock, including Alan Kestenbaum, which effectively extinguishes any potential claims or objections that could be asserted against those individuals and entities by the Debtors' estates or their representatives thereby foreclosing further litigation or challenge regarding Bedrock's claims, liens, or conduct in connection with the Chapter 11 Cases.

7.    Deborah Kestenbaum, Alan Kestenbaum's ex-wife, owns a 5% membership interest in KTRV. Jordan Kestenbaum, Alan's son, holds a 41% membership interest in KTRV

and serves as a manager of the company. Jacob Kestenbaum, also Alan's son, is the beneficiary of a trust—of which Alan is the sole trustee—that owns a 13% membership interest in KTRV. Arielle Kestenbaum, Alan's daughter, is the beneficiary of a trust—of which Deborah Kestenbaum is the sole trustee—that holds a 41% membership interest in KTRV. Additionally, David Tradburks, Alan Kestenbaum's son-in-law, is a manager of KTRV.

**D.    Plan Releases and Exculpation**

8.    The Plan, filed on September 1, 2025, contains broad release provisions that, if approved, would permanently bar the Debtors, their estates, successors, and the Liquidating Trustee from asserting any claims or causes of action against certain "Released Parties." The definition of Released Parties in the Plan includes the following "…the Debtors' officers, directors, managers, and members and Professionals." [2]

9.    The Plan provides for broad releases that would permanently bar the Debtors, their estates, successors, and the Liquidating Trustee[3] from asserting any claims or causes of action against the Released Parties, including the KTRV Parties. As set forth in Section 9.02 of the Plan, these releases extend to:

> any claim, Claim, Cause of Action, obligation, suit, judgment, damages, debt, right, remedy, liability, action, proceeding, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, or right to payment, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, for any act or omission in connection with, relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' operations, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the

---

[2]    For purposes of this Objection, the subset of the Released Parties affiliated with the Debtors are the "KTRV Parties", and the releases for the KTRV Parties are the "KTRV Releases."

[3]    Capitalized terms not defined herein are defined in the Plan.

> business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, or the Combined Disclosure Statement and Plan, and the administration, formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing…

Plan, Art. IX(2).

10.     Section 9.03 of the Plan provides for exculpation and limitation of liability for certain parties involved in the Chapter 11 cases (the "Exculpated Parties"). Specifically, the Plan states that, except as otherwise provided, the Exculpated Parties:

> shall not have or incur, and are hereby released and exculpated from, any liability, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively in law or equity, to any Holder of a Claim or an Interest, or any other party-in-interest, or any of their respective members, directors, officers, managers, trustees, employees, advisors, attorneys, professionals, agents, partners, stockholders or Affiliates, or any of their respective successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Combined Disclosure Statement and Plan, solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction).

Plan, Art. IX(3).

## LIMITED OBJECTION

11.     The combined effect of Sections 9.02 and 9.03 of the Plan would be to release the KTRV Parties from any claims arising prior to the chapter 11 cases and exculpate them from any claims arising during the chapter 11 cases. The Committee believes that each is inappropriate.

12.     By granting such sweeping releases, the Plan would insulate the KTRV Parties from liability for wrongdoing, breach of fiduciary duty, or other actionable conduct, regardless of whether the Committee or other estate fiduciaries have had the opportunity or resources to investigate such claims. The proposed KTRV Releases would extinguish the Liquidating Trustee's ability to evaluate or pursue any potential claims against the KTRV Parties, absent a showing of egregious misconduct, thus depriving creditors and the Debtors' estates of any meaningful recourse against insiders and affiliates.

**A.     The KTRV Releases Fail to Withstand Scrutiny Under the *Zenith* Factors**

13.     Courts in the Third Circuit apply a non-exhaustive, five factor test to evaluate non-debtor releases (the "*Zenith* Factors").  The *Zenith* Factors include:

  a.  whether there is an identity of interest between the debtor and non-debtor such that a suit against the non-debtor will deplete the estate's resources;

  b.  whether the non-debtor has made a substantial contribution to the plan;

  c.  the necessity of the release to the reorganization;

  d.  the overwhelming acceptance of the plan and release by creditors and interest holders; and

  e.  the payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*In re Hercules Offshore, Inc.*, 565 B.R. 732, 755 (Bankr. D. Del. 2016) (citing *In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *see also In re Exide Techs.,* 303 B.R. 48, 72 (Bankr. D. Del. 2003) (similar). Although no single factor is dispositive, courts in this district

place significant weight on whether the parties to be released have provided a substantial contribution to the plan. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 349-50 (Bankr. D. Del. 2011) (declining to approve releases of directors and officers who had not provided any substantial contribution to justify such releases); *In re Azzur Group Holdings, LLC*, Case No. 25-10342-KBO, Hr'g Tr. at 93:19 – 94:22 (Bankr D. Del. May 20, 2025). Courts do not grant third-party releases lightly, and the plan proponent bears the burden of establishing the appropriateness of the non-debtor releases. *See Zenith Elecs. Corp.*, 241 B.R. at 110; *see also Washington Mut., Inc.,* 442 B.R. at 327 (stating that releases must be "fair, reasonable, and in the best interests of the estate.").

14.     Applying the *Zenith* Factors to the KTRV Releases, the Committee submits that such releases are not warranted.

15.     First, an "identity of interest" exists only when claims "will deplete the estate's resources" if not released. *Washington Mut., Inc.,* 442 B.R. at 346; *see also In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504, 599 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023) (finding released parties shared an identity of interest with the debtors where released parties had "both indemnification and advancement rights against Debtors such that a suit against them [was], in essence, a suit against Debtors and/or [would] deplete [Debtors'] assets"). Here, the Debtors cannot demonstrate that they share an identity of interest with the parties benefiting from the KTRV Release such that litigation against them would deplete estate resources or that there is any risk that retaining such claims would deplete the Debtors' estates.

16.     Second, the KTRV Parties have made no substantial contributions to the Plan as required by the case law. The Releases are not supported by any demonstrable benefit to unsecured creditors or the Debtors' estates, and the KTRV Parties have not provided any

financial contribution, indemnity, or other value in exchange for the releases. Courts have recognized that there is a lack of consensus regarding what qualifies as a substantial contribution for purposes of granting a release to a non-debtor, and whether such a contribution must be a concrete financial benefit.[4] It is beyond dispute that mere participation in a restructuring falls far short of this standard. *See, e.g., In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 606–07 (Bankr. D. Del. 2001) (although management "no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring" and "negotiating the financial restructuring with parties in interest," they had "been otherwise compensated for their contributions" and "management functions they performed do not constitute contributions"); *In re Boomerang Tube, LLC*, No. 15-11247-MFW, Hr'g Tr. at 9:16–19 (Bankr D. Del. Nov. 9, 2015) ("negotiating a plan is not a sufficient substantial contribution by a director and officer, such as to warrant a release."); *In re Aegean Marine Petroleum Network*, 599 B.R. 717, 729 (Bankr. S.D.N.Y. 2019) ("directors did what they were paid to do, and that does not mean they are entitled to releases of third-party claims"); *In re Nat'l Heritage Found., Inc.*, 478 B.R. 216, 229 (Bankr. E.D. Va. 2012) (rejecting argument that "officers and directors contributed by performing their duties in the reorganization" because "officers and directors, all of whom are insiders, performed their duties either because they were paid to do so (in the case of the officers), or because they had a fiduciary

---

[4]    *Compare In re Washington Mut., Inc.,* 442 B.R. at 348-49 (denying a release to parties who merely fulfilled their fiduciary duties and did not "contribute cash or anything else of a tangible value to the Plan or to creditors nor provided an extraordinary service that would constitute a substantial contribution to the Plan or case"), *and In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 606–07 (Bankr. D. Del. 2001) (holding that restructuring efforts of directors and officers were not contributions to the reorganization when they were otherwise compensated), *with In re Indianapolis Downs, LLC,* 486 B.R. 286, 303-04 (Bankr. D. Del. 2013) (permitting a release when postpetition work is performed without compensation); *Hercules Offshore,* 565 B.R. at 756-57 (holding that a release of the debtors' officers, directors, and professionals is appropriate under business judgment standard where release was integral to proposed plan which provided creditors with full payment of their claims plus a return to equity); *In re Exide Techs.*, 303 B.R. 48, 74 n.37 (Bankr. D. Del. 2003) (noting that tangible contribution of assets may not be necessary when plan has substantial creditor support or creditors receive a meaningful distribution). In this case, of course, there is no certainty that unsecured creditors will receive any distribution at all.

obligation to do so (in the case of the directors).”); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (even “meaningful” work contribution not justification for release)).

17.    Only one of the KTRV Parties, David Tradburks, has even been present during these cases.  The remaining KTRV Parties, including KTRV officer Jordan Kestenbaum, have essentially been nonexistent.  In any event, sweat equity alone is not sufficient consideration for a release.  *See Nat’l Heritage*, 478 B.R. at 229 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 203 (1988)) (stating that “so-called ‘sweat equity’ is not sufficient to establish a new value contribution for the purpose of plan confirmation”).

18.    Third, it is clear that the KTRV Releases are not “essential” to the “reorganization,” such that, without them, “there is little likelihood of success.” *Zenith*, 241 B.R. at 110. The Debtors can point to no contribution by any of the KTRV Parties that is contingent upon them receiving a release, and the KTRV Releases are not a component of a larger settlement.  *See In re Tribune Co.*, 464 B.R. 126, 188 (Bankr. D. Del. 2011) (“This part of the Debtors’ Release is a component of the of the DCL Plan Settlement, which made a substantial contribution to the estate, is a necessary piece of the reorganization, and has been accepted by creditors.”).  In fact, rather than being integral in any way to the Plan, the KTRV Releases pose a significant obstacle to consensual confirmation. Because the Debtors insisted on including the broad KTRV Releases in the Plan despite lacking the necessary legal and factual justification for doing so, the Committee is not able to support the Plan, making confirmation much less likely. Under these circumstances, the only apparent basis for the KTRV Releases is the interest of the KTRV Parties themselves.

19.    Fourth, there is no evidence of overwhelming creditor support for such releases, evidenced by this objection from the Committee, the party charged with representing the

interests of the general unsecured creditors, who may not receive a single penny from the Debtors' estates unless the Svonavec Claims or the D&O Claims (or both) are successfully monetized.

20.     Fifth, the Plan does not provide for payment of all or substantially all claims, further undermining the justification for broad releases. Here, the Debtors' own projections estimate that unsecured creditors will receive only 0.5% to 10.0% in exchange for their claims. *See* Plan, Art. IV, Section 4.05 (estimating a recovery of 0.5-10% for general unsecured creditors); *see also* 11 U.S.C. § 1126(g) ("Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.").

**B.     The KTRV Releases Are Not Fair, Reasonable, or in the Best Interests of the Debtors' Estates**

21.     The Committee knows one thing for certain: Heritage Holding Co., LLC ("HHC")[5] sold a successful coal business, Heritage Coal & Natural Resources ("HCNR"), to KTRV in early 2024. And yet, before the ink was dry on that sale, KTRV and HCNR began a rapid and spectacular collapse, culminating in the filing of these Chapter 11 Cases about one year after the sale closing.

22.     Since the inception of these cases, the Committee has witnessed the Svonavec Parties and the KTRV Parties lobbing accusations at one another over their conduct relating to the Debtors' collapse, both pre- and post-petition. These accusations of misconduct continue to

---

[5]     HHC was owned by Jason and Angela Svonavec (together, the "Svonavec Parties"), who remain with the company.

this day, even after the Svonavec Parties repurchased the majority of the assets they sold to KTRV and resumed operating a coal business with those assets.

23.     The Committee has not had the funding to pursue a complete and thorough investigation into whether the allegations against the Svonavec Parties by the KTRV Parties add up to real, actionable claims for the estates (the "Svonavec Claims"), or whether the allegations concerning the KTRV Parties' failure to successfully operate the business could result in director and officer liability or other similar claims against the KTRV Parties for the benefit of unsecured creditors (the "D&O Claims"). Although certain facts alleged by the Svonavec Parties and KTRV Parties are fundamentally at odds, the Committee believes that the Svonavec Claims and D&O Claims are not necessarily mutually exclusive, and the Debtors' estates could have valuable, colorable claims against each.

24.     On September 22, 2025, the Debtors filed a motion to hire contingency counsel to investigate and prosecute the Svonavec Claims on behalf of the estates [D.I. 519] (the "Spiro Motion").  As the Committee explains in its objection to the Spiro Motion [D.I. 537], such retention is premature, even if use of contingency counsel may ultimately be the best option given the financial realities of these cases. Read together with the proposed KTRV Releases, the Debtors' efforts to retain contingency counsel suggest intent to box out the D&O Claims, ensuring any investigation and potential litigation is solely focused on the Svonavec Claims and limiting the Liquidating Trustee's ability to maximize value for the benefit of unsecured creditors.

25.     The Committee has serious concerns that the Debtors' decision to pursue the Svonavec Claims to the exclusion of the D&O Claims is not an arms-length, properly negotiated decision. For instance, the Committee has insisted for several months that the KTRV Parties

retain their own separate counsel to properly negotiate their releases with the Debtors and to represent the KTRV Parties with respect to their alleged individual claims against the Svonavec Parties, which may be separate from the Debtors' Svonavec Claims. The Committee is not aware that the KTRV Parties have ever retained separate counsel, yet somehow the KTRV Parties have accomplished a release pursuant to the Plan without making any contribution.

26.     Therefore, to the extent that the Plan includes the proposed KTRV Releases, the Committee objects to the entry of a Confirmation Order because the KTRV Releases are inappropriate and impermissible.

## **RESERVATION OF RIGHTS**

27.     The Committee expressly reserves all rights, claims, defenses, and remedies, including, without limitation, to supplement and amend this Objection, to raise further and other objections to the Plan, and to introduce evidence prior to or at any hearing regarding confirmation of the Plan in the event that the Committee's objections are not resolved prior to such hearing.

## **CONCLUSION**

For the reasons set forth above, the Committee respectfully requests that the Court deny confirmation of the Plan to the extent the Plan allows the Releases to KTRV Parties and other insiders and grant such other and further relief as the Court deems just and proper.

Dated: October 7, 2025
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Kimberly A. Brown*
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
Elizabeth A. Rogers (No. 7335)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email:  brown@lrclaw.com
        pierce@lrclaw.com
        erogers@lrclaw.com

        -and-

**FROST BROWN TODD LLP**

Jordan S. Blask, Esq. (admitted *pro hac vice*)
Union Trust Building
501 Grant Street, Suite 800
Pittsburgh, PA 15219
Telephone: (412) 513-4300
Facsimile:  (412) 513-4299
Email:  jblask@fbtlaw.com

        -and-

Ronald E. Gold, Esq. (admitted *pro hac vice*)
Great American Tower
301 East Fourth Street, Suite 3300
Cincinnati, OH 45202
Telephone: (513) 651-6800
Facsimile:  (513) 651-6981
Email:  rgold@fbtlaw.com

        -and-

Bryan J. K. Sisto, Esq. (admitted *pro hac vice*)
400 West Market Street, Suite 3200
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile:  (502) 589-1087
Email:  bsisto@fbtlaw.com
*Counsel to the Official Committee of Unsecured*
*Creditor*